## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **IN RE APPLICATION OF THE ASSOCIATED PRESS, GANNETT CO., INC., GRAY MEDIA GROUP, INC., HEARST CORPORATION, AND THE TEXAS TRIBUNE TO UNSEAL COURT RECORDS** | Misc. Action No. _____ |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION OF THE ASSOCIATED PRESS, GANNETT CO., INC., GRAY MEDIA GROUP, INC., HEARST CORPORATION, AND THE TEXAS TRIBUNE TO UNSEAL COURT RECORDS

Katie Townsend
(S.D. Texas Bar No. 3547279)
ktownsend@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Pro hac vice application pending*

*Counsel for Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and The Texas Tribune*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

CORPORATE DISCLOSURE STATEMENT ................................... vii

PRELIMINARY STATEMENT .......................................................... 1

FACTUAL BACKGROUND ............................................................... 2

ARGUMENT....................................................................................... 6

I.   The public has a presumptive right of access to court records related to the search of Congressman Cuellar's home and campaign office. ................. 6

    A.   The public has a common law right of access to warrant materials. ....... 7

    B.   The public has a common law right of access to docket sheets............... 7

    C.   The public also has a presumptive First Amendment right of access to the judicial records at issue. .................................................... 8

II.   The public's presumptive rights of access can be overcome only on a compelling showing that the Government cannot make on these facts. ........11

    A.   The public has a powerful interest in understanding potential misconduct by a public official and the steps taken to investigate it. ...............................................................................................12

    B.   Any interest that might support secrecy in another case has been substantially diminished by the information that is already public. .......14

    C.   To the extent residual secrecy interests exist, only redaction—not wholesale sealing—could potentially be warranted on these facts.........16

CONCLUSION .................................................................................17

CERTIFICATE OF SERVICE...........................................................19

# TABLE OF AUTHORITIES

## Cases

*Baltimore Sun Co. v. Goetz*,
  886 F.2d 60 (4th Cir. 1989) ................................................................7, 9

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ...........................................6, 11, 12, 17

*Bradley ex rel. AJW v. Ackal*,
  954 F.3d 216 (5th Cir. 2020) ...............................................8, 11, 13

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) .....................................................10, 11

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987).............................................................11

*Greenlaw v. Klimek*,
  No. 4:20-cv-311, 2020 WL 7318085 (E.D. Tex. Dec. 11, 2020).......................16

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ...............................................8, 9, 10, 11

*In re L.A. Times Commc'ns LLC*,
  28 F.4th 292 (D.C. Cir. 2022)...............................................7, 13, 15

*In re Hearst Newspapers, L.L.C.*,
  641 F.3d 168 (5th Cir. 2011) .........................................................12

*In re Leopold to Unseal Certain Elec. Surveillance Applications &
  Orders*,
  300 F. Supp. 3d 61 (D.D.C. 2018),
  *rev'd on other grounds*, 964 F.3d 1121 (D.C. Cir. 2020) ...................................9

*In re Leopold to Unseal Certain Elec. Surveillance Applications &
  Orders*,
  964 F.3d 1121 (D.C. Cir. 2020) .........................................6, 7, 8, 17

*In re N.Y. Times Co.*,
  585 F. Supp. 2d 83 (D.D.C. 2008) ......................................13, 15, 16

iii

*In re Nat'l Broad. Co.*,
   635 F.2d 945 (2d Cir. 1980) .........................................................................11, 14

*In re Search Warrant for Secretarial Area Outside Off. of Gunn*,
   855 F.2d 569 (8th Cir. 1988) .......................................................................2, 9, 13

*In re Search Warrant*,
   No. 16-MAG-7063, 2016 WL 7339113 (S.D.N.Y. Dec. 19, 2016) ...................10

*In re State-Record Co.*,
   917 F.2d 124 (4th Cir. 1990) ...........................................................................10

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*,
   707 F.3d 283 (4th Cir. 2013) ............................................................................ 8

*June Medical Servs., L.L.C. v. Phillips*,
   22 F.4th 512 (5th Cir. 2022) ......................................................................11, 14

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986) ............................................................................................ 8

*Roviaro v. United States*,
   353 U.S. 53 (1957) ..........................................................................................16

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
   825 F.3d 299 (6th Cir. 2016) ...........................................................................11

*Smith v. U.S. District Court*,
   956 F.2d 647 (7th Cir. 1992) ...........................................................................12

*Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*,
   565 F. App'x 477 (6th Cir. 2012) ....................................................................10

*United States v. All Funds on Deposit at Wells Fargo Bank*,
   643 F. Supp. 2d 577 (S.D.N.Y. 2009)..........................................................10, 17

*United States v. Beckham*,
   789 F.2d 401 (6th Cir. 1986) ...........................................................................14

*United States v. Bus. of Custer Battlefield Museum & Store*,
   658 F.3d 1188 (9th Cir. 2011) ....................................................................12, 16

*United States v. Criden*,
  648 F.2d 814 (3d Cir. 1981) ................................................................14

*United States v. Holy Land Found. for Relief & Dev.*,
  624 F.3d 685 (5th Cir. 2010) .........................................................14, 15

*United States v. Mendoza*,
  698 F.3d 1303 (10th Cir. 2012) ..........................................................10

*United States v. Rayburn House Off. Bldg.*,
  497 F.3d 654 (D.C. Cir. 2007).........................................................4, 13

*United States v. Sealed Search Warrants*,
  868 F.3d 385 (5th Cir. 2017) ........................................................*passim*

*Va. Dep't of State Police v. Wash. Post*,
  386 F.3d 567 (4th Cir. 2004) ...............................................................16

**Other Authorities**

Aaron Navarro, *Texas Rep. Henry Cuellar Is Not the Target of FBI
  Investigation, His Attorney Says*, CBS News (Apr. 13, 2022),
  https://perma.cc/69WQ-6AQ6 ............................................................... 3

Abby Livingston, *Timing of FBI Raid on Henry Cuellar's Home So Close
  to Election Raises Questions*, Tex. Trib. (Feb. 1, 2022),
  https://perma.cc/2T2Y-ATSF .............................................................. 5

Biography, United States Congressman Henry Cuellar,
  https://perma.cc/GV2N-2SFC............................................................... 2

Christian Alejandro Ocampo, *FBI Won't Officially Clear Cuellar of
  Wrongdoing Before Election Day*, Laredo Morning Times (May 22,
  2022),
  https://perma.cc/G3SA-PWQJ .............................................................. 6

Eric Tucker & Jake Bleiberg, *Lawyer: US Rep. Cuellar Not the Target of
  FBI Investigation*, AP (Apr. 13, 2022),
  https://bit.ly/3Gil8es ............................................................................. 3

Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog
  Will Review a Trump-Era Probe of Democratic Lawmakers*, NPR

(June 11, 2021),
https://perma.cc/L8J8-Q2C8 ............................................................... 4

Mariana Alfaro, *Henry Cuellar Defeats Jessica Cisneros in Contentious Texas Primary Race*, Wash. Post (June 21, 2022),
https://perma.cc/935Z-FTJD ...........................................................6, 13

Memorandum from the Att'y Gen. Regarding Election Year Sensitivities (Apr. 11, 2016),
https://perma.cc/2ZBN-SXXJ ............................................................ 5

Michael Balsamo et al., *Justice Department to Tighten Rules on Seizing Congress Data*, AP (June 14, 2021),
https://perma.cc/CD8A-ANW9 .......................................................... 5

Michelle Onibokun & Chuck Rosenberg, *The Justice Department's Policy Against Election Interference Is Open to Abuse*, Lawfare (Sept. 11, 2020),
https://perma.cc/W8VB-YM5J ........................................................... 5

Mike Levine, *Feds Issue Subpoenas Seeking Records Related to Rep. Cuellar and His Wife, Associates*, ABC News (Jan. 21, 2022),
https://perma.cc/3378-CQ4S ...........................................................3, 4

Patrick Svitek, *After FBI Raid, U.S. Rep. Henry Cuellar Says Investigation Will Prove "No Wrongdoing on My Part"*, Tex. Trib. (Jan. 25, 2022),
https://perma.cc/6UDL-NHUS .......................................................3, 15

Sarah Ferris & Ally Mutnick, *'Corruption' or 'Socialism': GOP Takes Aim at South Texas Either Way*, Politico (Mar. 3, 2022),
https://perma.cc/JXX2-6FGZ..............................................................15

Valerie Gonzalez, *FBI Probe Targets Rep. Cuellar's Home, Campaign HQ in Laredo*, The Monitor (Jan. 19, 2022),
https://perma.cc/R28U-T86V...............................................1, 2, 3, 15

**Rules**

Fed. R. Crim. Proc. 41 ........................................................................ 2

## CORPORATE DISCLOSURE STATEMENT

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law.  It is not publicly traded.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned.  BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Gray Media Group, Inc. is owned by Gray Television, Inc.  Gray Television, Inc. is a publicly-traded corporation and no entity holds 10% or more of its equity.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

The Texas Tribune is a 501(c)(3) nonprofit organization with no parent company and no stock.

**PRELIMINARY STATEMENT**

The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and the *Texas Tribune* ("Applicants") respectfully move this Court for an order unsealing certain judicial records related to search warrants obtained pursuant to Federal Rule of Criminal Procedure 41 and executed at the Laredo home and campaign office of U.S. Representative Henry Cuellar on or about January 19, 2022. *See* Valerie Gonzalez, *FBI Probe Targets Rep. Cuellar's Home, Campaign HQ in Laredo*, The Monitor (Jan. 19, 2022), https://perma.cc/R28U-T86V. Specifically, Applicants seek an order unsealing the executed search warrants, the search warrant applications, any supporting affidavits, the returns, the docket sheets, and any other judicial records related to the search warrants (the "Warrant Materials").

In this jurisdiction, the law is settled that the press and public have a qualified common law right of access to search warrant materials. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017). Any restrictions on the public's rights can be tolerated, if at all, only after "balancing the legitimate interests *against* public access against the public's interests *supporting* access," *id.* at 395–96, a task that requires taking stock of the less-restrictive alternative of redaction, *see id.* at 395. The First Amendment likewise extends the press and public a presumptive right to inspect warrant materials after

1

the warrant's execution, *see In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988), and imposes an even more rigorous burden on the Government to justify any departures from transparency. For the reasons given herein, application of either analysis requires that the Warrant Materials be unsealed, subject—at most—to any tailored redactions for which the Government can show a compelling justification.

## FACTUAL BACKGROUND

Congressman Henry Cuellar is currently serving his ninth term as the United States Representative for Texas's 28th congressional district. *See* Biography, United States Congressman Henry Cuellar, https://perma.cc/GV2N-2SFC.  On or about January 19, 2022, the Federal Bureau of Investigation ("FBI") executed search warrants at his home and campaign office in Laredo.  *See* Gonzalez, *supra*. On information and belief, the warrants were issued by a magistrate judge or judges of the U.S. District Court for the Southern District of Texas.  *See* Fed. R. Crim. Proc. 41(b)(1) (describing authority of a magistrate judge "to issue a warrant to search for and seize a person or property located within the district").

The fact of the warrants' execution is already widely known.  An FBI spokesperson confirmed that the agency was "conducting court-authorized law enforcement activity" at Cuellar's home on January 19, 2022, Gonzalez, *supra*, and the searches were witnessed by members of the press and public at the two scenes.

A reporter saw, for instance, "cases and other items taken from the congressman's house as over two dozen agents filed in and out of the residence [that] afternoon," *id.*, and agents were likewise observed at Congressman Cuellar's office, *see id.*

Congressman Cuellar publicly confirmed the searches shortly after they occurred, stating "[t]here is an ongoing investigation that will show that there was no wrongdoing on my part." Patrick Svitek, *After FBI Raid, U.S. Rep. Henry Cuellar Says Investigation Will Prove "No Wrongdoing on My Part"*, Tex. Trib. (Jan. 25, 2022), https://perma.cc/6UDL-NHUS. In April of 2022, Congressman Cuellar's attorney stated that "[t]he Justice Department ha[d] informed [him] that Congressman Cuellar is not a target of the investigation." Aaron Navarro, *Texas Rep. Henry Cuellar Is Not the Target of FBI Investigation, His Attorney Says*, CBS News (Apr. 13, 2022), https://perma.cc/69WQ-6AQ6.

Shortly after the search warrants were executed, ABC News reported that the searches were prompted by a federal grand jury probe related to Azerbaijan. *See* Mike Levine, *Feds Issue Subpoenas Seeking Records Related to Rep. Cuellar and His Wife, Associates*, ABC News (Jan. 21, 2022), https://perma.cc/3378-CQ4S. The Associated Press confirmed that connection based on a source "with direct knowledge of the probe." Eric Tucker & Jake Bleiberg, *Lawyer: US Rep. Cuellar Not the Target of FBI Investigation*, AP (Apr. 13, 2022), https://bit.ly/3Gil8es. As the news media noted, Congressman Cuellar has served

as the co-chair of the Congressional Azerbaijan Caucus and has also "been an outspoken advocate for the nation over the past decade."  Levine, *supra*.

Further information about the investigation has been made public thanks to a subpoena related to the probe reviewed by ABC News, which sought records "'relating to anything of value' that the congressman, his wife, and others close to them may have been offered by certain business leaders or foreign officials," *id.*, including entities and individuals that the Justice Department previously named in a "scheme to conceal that a 2013 congressional delegation to Baku—which did not include Cuellar, according to press reports—was paid for by SOCAR, the state-owned gas company, 'in order to gain access to these public officials,'" *id.*

The searches were the subject of enormous public attention and interest.  For one, searches of the property of Members of Congress are a matter of paramount public concern because they raise unique separation-of-power concerns.  *See, e.g.*, Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog Will Review a Trump-Era Probe of Democratic Lawmakers*, NPR (June 11, 2021), https://perma.cc/L8J8-Q2C8.  Indeed, for past searches involving Members of Congress, the Justice Department has sometimes included "special procedures" in its warrant applications to minimize infringement on legislative prerogatives. *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 656 (D.C. Cir. 2007). The Department also recently revised its rules to "ensure that full weight is

accorded to separation-of-powers concerns" in such cases.  Michael Balsamo et al.,

*Justice Department to Tighten Rules on Seizing Congress Data*, AP (June 14,

2021), https://perma.cc/CD8A-ANW9.

The search and seizure of Congressman Cuellar's property was especially

unusual due to its proximity to his highly competitive primary election.  *See* Abby

Livingston, *Timing of FBI Raid on Henry Cuellar's Home So Close to Election

Raises Questions*, Tex. Trib. (Feb. 1, 2022), https://perma.cc/2T2Y-ATSF.  As a

matter of longstanding policy, to avoid disrupting the orderly democratic process,

the Justice Department requires additional consultation with the Public Integrity

Section of the Criminal Division when prosecutors "are faced with a question

regarding the timing of charges or overt investigative steps near the time of a

primary or general election."  Memorandum from the Att'y Gen. Regarding

Election Year Sensitivities (Apr. 11, 2016), https://perma.cc/2ZBN-SXXJ.

The adequacy of the Justice Department's policies on taking overt steps near

an election is likewise a subject of legitimate public interest.  *See* Michelle

Onibokun & Chuck Rosenberg, *The Justice Department's Policy Against Election

Interference Is Open to Abuse*, Lawfare (Sept. 11, 2020), https://perma.cc/W8VB-

YM5J.  In this case, for instance, the highly public searches—coupled with a lack

of clarity about their factual basis—left Texas voters "stuck with no confirmation

one way or the other regarding whether or not Cuellar is a target of the

investigation as they head[ed] to the polls for Election Day."  Christian Alejandro

Ocampo, *FBI Won't Officially Clear Cuellar of Wrongdoing Before Election Day*,

Laredo Morning Times (May 22, 2022), https://perma.cc/G3SA-PWQJ.

On May 24, 2022, Congressman Cuellar narrowly won his party's

nomination for another term.  *See* Mariana Alfaro, *Henry Cuellar Defeats Jessica*

*Cisneros in Contentious Texas Primary Race*, Wash. Post (June 21, 2022),

https://perma.cc/935Z-FTJD.  The general election is November 8, 2022.

## ARGUMENT

### I.    The public has a presumptive right of access to court records related to the search of Congressman Cuellar's home and campaign office.

"The public's right of access to judicial records is a fundamental element of

the rule of law."  *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir.

2021) (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications &*

*Orders* ("*In re Leopold*"), 964 F.3d 1121, 1123 (D.C. Cir. 2020) (Garland, J.)).  In

this Circuit, the law vindicates that principle in two overlapping ways—a First

Amendment right of access to certain judicial proceedings and records, as well as

"a qualified right of access to judicial documents that is born from the common

law."  *Sealed Search Warrants*, 868 F.3d at 390 n.1.  Here, as the Fifth Circuit has

held, the common law clearly extends the public a presumptive right to inspect the

Warrant Materials and their docket sheets.[1]  And while this Court need not reach the constitutional question—because the common law alone requires all of the relief that Applicants seek, *see In re Leopold*, 964 F.3d at 1126–27—the First Amendment likewise guarantees the press and public transparency in this context.

    A.    <u>The public has a common law right of access to warrant materials.</u>

It is well-settled in this Circuit that "the qualified common law right of access can extend to an individual seeking to access pre-indictment search warrant materials," *Sealed Search Warrants*, 868 F.3d at 390, and that a district court resolving such a motion must "balanc[e] the legitimate interests *against* public access against the public's interests *supporting* access" on the facts of the particular case, *id.* at 395–96; *accord In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 296–97 (D.C. Cir. 2022); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65–66 (4th Cir. 1989).  As discussed in greater detail below, that analysis requires unsealing—subject, at most, to tailored redactions—here.

    B.    <u>The public has a common law right of access to docket sheets.</u>

---

[1]    As Applicants understand it, the Southern District of Texas often dockets search warrants—sealed or unsealed—without including information that would distinguish one warrant from another on the docket sheet.  *See, e.g.*, *United States v. Search Warrant*, No. 2:22-mj-00059 (S.D. Tex. Jan. 18, 2022) (reflecting the existence of a sealed warrant); *United States v. Search Warrant*, No. 4:22-mj-00144 (S.D. Tex. Jan. 21, 2022) (docketing a public one).  As a result, Applicants cannot know if the Warrant Materials are publicly docketed but sealed or if the docket sheet itself is sealed as well.  Applicants therefore address the right of access to docket sheets in the interest of clarity and for the benefit of the Court.

The public also has a qualified common law right of access to any docket sheets associated with the Warrant Materials.  "[I]t is commonsensical that judicially authored or created documents are judicial records" subject to a common law presumption of access.  *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 227 (5th Cir. 2020) (quoting *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)).  So too with respect to docket sheets, created by the court to record the course of judicial proceedings.  And in providing "a 'kind of index to judicial proceedings,'" docket sheets play the further important role of "facilitating public access to the underlying documents."  *In re Leopold*, 964 F.3d at 1129 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).  In that light, "[i]t would make little sense to provide public access to court documents but not to the indices that record them and thus make them accessible."  *Id.*  The qualified common law right extends to the docket sheets.

> C.    The public also has a presumptive First Amendment right of access to the judicial records at issue.

The First Amendment also guarantees the public a presumptive right of access to the Warrant Materials and any accompanying docket sheets.  As the Supreme Court has explained, that inquiry looks to whether the complementary considerations of "experience and logic" support a constitutional presumption of access.  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986).

8

With respect to the Warrant Materials, "[f]requently—probably most
frequently—the warrant papers including supporting affidavits are open for
inspection by the press and public in the clerk's office after the warrant has been
executed." *Baltimore Sun Co.*, 886 F.2d at 64; *accord In re Gunn*, 855 F.2d at 573
(explaining that, after the search's execution, "search warrant applications and
receipts are routinely filed with the clerk of court without seal"); *In re Leopold*,
300 F. Supp. 3d 61, 88 (D.D.C. 2018) (noting "unbroken, uncontradicted history of
openness" of "post-execution search warrant materials" (citation omitted)), *rev'd
on other grounds*, *In re Leopold*, 964 F.3d 1121 (D.C. Cir. 2020).  That history is
reinforced by the fact that warrant materials are presumptively accessible to the
public at common law, as discussed above.  *See Pellegrino*, 380 F.3d at 92 (noting
that courts have "generally invoked the common law right of access to judicial
documents in support of finding a history of openness").

    Logic, too, favors access to warrant materials filed with the court after their
execution for the same reasons the Fifth Circuit has found that the common law
right attaches: "[T]he right of access promotes the trustworthiness of the judicial
process, curbs judicial abuses, and provides the public with a better understanding
of the judicial process, including its fairness." *Sealed Search Warrants*, 868 F.3d
at 395.  Search warrant applications and supporting affidavits filed by the
Government "are critical to judicial determinations of whether the Fourth

Amendment's probable cause standards are met," *In re Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016), and "public access to them facilitates public monitoring of the various government agencies and branches" involved in executing a search, *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583–84 (S.D.N.Y. 2009).

The docket sheets, too, to the extent they are not already public, are subject to a constitutional presumption of public access, as a number of courts have concluded. *See Pellegrino*, 380 F.3d at 91 (holding that "the media and the public possess a qualified First Amendment right to inspect docket sheets"); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that "the public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets"); *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (reversing the sealing of docket sheets in criminal cases as overbroad and incompatible with the First Amendment); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits . . . .").

As to experience, there is a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012); *see also Pellegrino*, 380 F.3d at 94 (tracing the tradition of open "docket books" to "the first years of the Republic"). And logic plainly favors access to dockets

because, among other vital roles, they facilitate the public's exercise of its right to inspect court documents and proceedings.  *Public Citizen*, 749 F.3d at 268; *Pellegrino*, 380 F.3d at 93.

## II.   The public's presumptive rights of access can be overcome only on a compelling showing that the Government cannot make on these facts.

Where the common law right is asserted, a court balancing the interests for and against disclosure on the facts presented must start from "the working presumption . . . that judicial records should not be sealed," *Binh Hoa Le*, 990 F.3d at 419, and any degree of secrecy is "heavily disfavor[ed]," *June Medical Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).  That presumption is powerful enough that even standing "alone" it may "outweigh[] any interest favoring nondisclosure."  *Bradley*, 954 F.3d at 233.  But here it hardly stands alone.

"[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access."  *June Medical Servs.*, 22 F.4th at 520 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).  In this case, unsealing the Warrant Materials would advance public interests of the highest order, including the public's interest in inspecting records that document "the activities of a Member of Congress . . . as well as agents of the Federal Bureau of Investigation."  *In re Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980); *see also FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("[I]n such circumstances, the

public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."); *Smith v. U.S. District Court*, 956 F.2d 647, 650 (7th Cir. 1992) (same).  Moreover, any countervailing interests are diminished by the information that is already public and would, at most, justify tailored redactions—not blanket sealing.  *See Binh Hoa Le*, 990 F.3d at 420 (emphasizing that "the extent of sealing" must be "congruent to the need").

The First Amendment standard is more rigorous still: "[T]he presumption [of openness] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 181 (5th Cir. 2011) (alterations in original) (citations omitted).  To the extent the common law requires disclosure for the reasons discussed below, it follows *a fortiori* that the First Amendment requires public access to the materials as well.

    A.    The public has a powerful interest in understanding potential <u>misconduct by a public official and the steps taken to investigate it.</u>

Unsealing the Warrant Materials would directly advance a number of powerful public interests.  Even in cases involving private individuals, access to warrant materials "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police."  *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011)

(quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008)); *see also, e.g.*, *In re Gunn*, 855 F.2d at 573.  But where the property of a public official is searched or seized, the need for transparency is greater still.  As the Fifth Circuit has observed, that court records "involve[] public officials or parties of a public nature and matters of legitimate public concern," *Bradley*, 954 F.3d at 232, is a fact that will generally "weigh[] in favor of disclosure," *id.* at 233.  Here, the public has a clear interest in understanding the grounds for the Government's dramatic, overt search of a Member of Congress locked in a close primary fight.

Such a search implicates, for instance, sensitive separation-of-power concerns, *see Rayburn House Off. Bldg.*, 497 F.3d at 661, and the public is entitled to understand whether those considerations were given due weight.  The public also has an interest in understanding the Justice Department's departure from its norm against taking overt investigative steps close in time to an election—especially an election that came down to just a few hundred votes.  *See* Alfaro, *supra*.  And the public is entitled to understand the basis for the Government's conclusion—and a federal court's—that probable cause existed to believe searching Congressman Cuellar's property would reveal evidence of a federal crime.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 298 (recognizing the "powerful public interest" in access to warrant materials that might shed light on possible misconduct by a Member of Congress "in his official capacity"); *see also,*

*e.g.*, *In re Nat'l Broad. Co.*, 635 F.2d at 952 (public interest in access "especially strong" in cases that involve potential wrongdoing by public officials); *accord United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986).

Applicants do not prejudge whether the Warrant Materials would show that the basis for the search was solid or flimsy, or for that matter whether Congressman Cuellar or the Justice Department acted anything but properly— demonstrating misconduct is no element of the analysis.  But "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view."  *Sealed Search Warrants*, 868 F.3d at 395 (second alteration in original) (quoting *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010)).  So too here.  The public has a powerful interest in access to the Warrant Materials.

> B.  Any interest that might support secrecy in another case has been substantially diminished by the information that is already public.

As the Fifth Circuit has made clear, "[p]ublicly available information cannot be sealed."  *June Medical Servs.*, 22 F.4th at 520.  Here, substantial information about the Warrant Materials is already in the public domain, undercutting any asserted need for continued sealing to protect privacy or investigative interests.

14

For one, the Government itself—through the statement of an FBI spokesperson—confirmed that it conducted "court-authorized law enforcement activity" at Congressman Cuellar's home.  Gonzalez, *supra*.  The Congressman, too, has acknowledged the Government's investigation several times over.  *See* Svitek, *supra*.  And the "extensive media reporting" about the searches has further eroded any justification for secrecy.  *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298.

This is not, as a result, a case in which unsealing the warrant materials risks causing un-redressable reputational harm.  *See id.* (noting that investigative privacy interests may be "attenuated where the very subject of the investigation has acknowledged it"); *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91 (same).  On the contrary, the highly publicized and publicly executed searches have already caused Congressman Cuellar reputational harm; his opponents have not hesitated to argue that the searches themselves were evidence of "corruption."  Svitek, *supra*; *see also* Sarah Ferris & Ally Mutnick, *'Corruption' or 'Socialism': GOP Takes Aim at South Texas Either Way*, Politico (Mar. 3, 2022), https://perma.cc/JXX2-6FGZ. And the continued sealing of the Warrant Materials leaves Congressman Cuellar "hamstrung in [his] ability to mitigate the damage done" by his very public association with a public corruption investigation.  *Holy Land Found.*, 624 F.3d at 690.  If anything, any interest in mitigating reputational harm points in favor of greater transparency in this case.

C.     To the extent residual secrecy interests exist, only redaction—not <u>wholesale sealing—could potentially be warranted on these facts.</u>

Applicants recognize that the Government may have interests related to its ongoing investigation that survive the public disclosures that have already taken place; the same may be true of third parties.  But this Court "can accommodate these concerns by redacting sensitive information rather than refusing to unseal the materials entirely."  *Custer Battlefield Museum*, 658 F.3d at 1195 n.5.  Shielding the identity of a confidential informant can be an important interest, for instance, *see Roviaro v. United States*, 353 U.S. 53, 59 (1957), but "that interest can be accomplished by simply redacting the identity and personal identifiers of the informants," *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91.  Similarly, the Government cannot rely talismanically on the fact that an investigation remains ongoing.  *See Sealed Search Warrants*, 868 F.3d at 395–96; *Greenlaw v. Klimek*, No. 4:20-cv-311, 2020 WL 7318085, at *2 (E.D. Tex. Dec. 11, 2020) ("[T]he fact that the records to be unsealed represent pre-indictment investigation materials is not, by itself, a bar to disclosure.").  Instead, the Government must explain with particularity "*how* the integrity of the investigation reasonably could be affected by the release" of particular information on the "specific facts" of the "given case." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004) (emphasis added).

16

Here, especially given the substantial information that is already public, such interests—to the extent any are at stake—cannot plausibly extend to the entirety of the Warrant Materials.  *See Wells Fargo*, 643 F. Supp. 2d at 585–86 (rejecting wholesale secrecy and adopting narrow redactions to warrant materials in an ongoing investigation); *see also Binh Hoa Le*, 990 F.3d at 419 (emphasizing that courts "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure" (citations and internal quotation marks omitted)).  To the extent the Government can prove the existence of any interests that would support continued sealing of a portion of the Warrant Materials, this Court should order it to propose redactions.

## CONCLUSION

For the foregoing reasons, Applicants respectfully ask this Court to enter an order unsealing the Warrant Materials, subject only—to the extent necessary—to any tailored redactions the Government may propose that are demonstratively required by countervailing interests.  *See In re Leopold*, 964 F.3d at 1134 n.14.

Dated: August 16, 2022                          Respectfully submitted,

                                                                *s/ Katie Townsend*
                                                                 Katie Townsend
                                                                 Attorney-in-Charge
                                                                 (S.D. Texas Bar. No. 3547279)
                                                                 ktownsend@rcfp.org

17

Grayson Clary\*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Pro hac vice application forthcoming*

*Counsel for Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and The Texas Tribune*

## CERTIFICATE OF SERVICE

I, Katie Townsend, hereby certify that on the 16th day of August, 2022, a copy of the foregoing was filed electronically using this Court's CM/ECF system, and sent via U.S. Mail to:

United States Attorney's Office for the Southern District of Texas
P.O. Box 1179
Laredo, TX 78042-1179

Dated: August 16, 2022                  Respectfully submitted,

                                        *s/ Katie Townsend*
                                        Katie Townsend
                                        REPORTERS COMMITTEE FOR
                                          FREEDOM OF THE PRESS

                                        *Counsel for Applicants The Associated*
                                        *Press, Gannett Co., Inc., Gray Media*
                                        *Group, Inc., Hearst Corporation, and The*
                                        *Texas Tribune*