UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | Civil Action No. 5:22-MC-00111 |
| ASSOCIATED PRESS ET AL. | ) ) ) ) | **FILED *EX PARTE* AND UNDER SEAL** |

## GOVERNMENT'S OPPOSITION TO MOTION TO UNSEAL SEALED RESPONSE OF THE UNITED STATES

Applicants, a group of media organizations, move to unseal the Government's Sealed Response in Opposition ("Response") to their original Application to Unseal Court Records. Because the Response in Opposition recites extensive, sensitive details about the government's active criminal investigation, the same compelling law-enforcement, due process, and privacy interests that require sealing the underlying search warrant materials also necessitate sealing the Response. But disclosure of the Response would inflict an additional, distinct harm. Because all the government's arguments are premised on the fact that the investigation remains ongoing, disclosure of the Response, even in redacted form, would necessarily reveal the investigation's current status—a fact that has not been reported in the media and that cannot be inferred from the warrant materials themselves, which date to January 2022. Such disclosure would do irreparable damage to both governmental and individual interests by alerting the investigation's subjects and the public that the investigation remains active, many months after the initial press coverage concerning to the execution of the search warrants. The Motion should be denied.

1

## I. PROCEDURAL BACKGROUND

On August 16, 2022, Applicants filed an Application seeking to unseal certain records relating to search warrants executed at the home and campaign office of Congressman Henry Cuellar on January 19, 2022 ("Warrant Materials"). *See* ECF No. 1.

On September 9, 2022, the government filed its Response. *See* ECF No. 7. The Response describes the government's ongoing investigation ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and argues that compelling law-enforcement, due process, and privacy interests require the continued sealing of the Warrant Materials. Because the Response in Opposition necessarily confirms the existence of the search warrants and recites details concerning the government's ongoing investigation, the government filed it *ex parte* and under seal. Consistent with this Court's procedures, the government identified the document as "SEALED" and by its title on the public docket. *See* Hon. Andrew M. Edison, Court Procedure 6(C)(7).

On September 12, 2022, Applicants moved to unseal the Response in Opposition. *See* ECF No. 8.

## II. ARGUMENT

The Fifth Circuit has recognized that, in litigation concerning the sealing of search warrant materials relating to an ongoing investigation, "[i]f appropriate, the government's submission . . . can be filed under seal." *United States v. Sealed Search Warrants*, 868 F.3d 385, 397 n.5 (5th Cir. 2017) (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989)). There can be no question that sealing is appropriate here.

2

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████ Accordingly, the same law-enforcement, due process, and privacy interests that require sealing the Warrant Materials also necessitate sealing the Government's Response in Opposition. *See id.* at 11–18.

Second, unsealing the Response, even in redacted version, would reveal the investigation's current status. The media reports surrounding FBI's presence at Congressman Cuellar's home in January 2022 are now many months old. The investigation's subjects may have assumed that the investigation has gone inactive or concluded without charges. Members of the public may have forgotten about it entirely. Unsealing the Response would reveal that the investigation remains active. That revelation could harm the investigation by causing subjects to destroy evidence, flee the jurisdiction, or otherwise take steps to obstruct the government's efforts. ████████████ ████████████████████████████████ █████

These harms could not be avoided through redaction. All of the government's arguments are premised on the fact that the investigation is ongoing. That fact is critical to the common-law balancing of interests and is referenced in virtually every paragraph of the section of the Response addressing Applicants' claims under the common law. *See* Response, at 12–18. Even disclosure of, as Applicants put it, the "*kinds* of interests [the government] claims are at stake" would necessarily reveal new information about the

3

investigation, as the kinds of interests at stake depend on the investigation's active status. If every reference to the investigation's status were redacted, there would be nothing meaningful left to disclose. *See United States v. Amadeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (recognizing that where document "has been rendered unintelligible as a result of redactions," it is "more likely to mislead than to inform the public").

The active status of the investigation also permeates the government's First Amendment-related arguments. *See* Response, at 18–25. The Response argues that the First Amendment does not attach to warrant materials *in an ongoing investigation*. *See id.* at 19 ("[T]hree Circuits have held that there is no First Amendment right to access documents filed in search warrant proceedings, at least in an active criminal investigation."). For example, the government cites *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989), for the proposition that the First Amendment does not attach to the materials in question. In *Times Mirror*, the Ninth Circuit addressed only whether the First Amendment applies to search warrant materials in an ongoing investigation, expressly reserving decision on whether the First Amendment attaches after "an investigation has been terminated." 873 F.2d at 1221; *see also United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1196 (9th Cir. 2011) (declining to decide whether the First Amendment "right of access applies to warrant materials after an investigation has ended"). Similarly, another case that the government cites in the Response, *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989), considered whether the First Amendment attaches to search warrant materials "in the interval between execution of the warrants and indictment." *Id.* at 62. If the investigation had concluded

4

without charges, *Baltimore Sun* would not be directly on point.

In other words, if, since the January 2022 execution of the search warrants and media reporting thereon, the government had closed the investigation, then the Response's discussion of the First Amendment would have looked very different. A sophisticated reader—as Applicants no doubt are—could easily infer from the government's arguments that the investigation remains active. It is therefore not the case, as Applicants contend, that "[t]here is no legitimate interest in concealing the Government's legal position" on whether the First Amendment applies. *See* ECF No. 8, at 9.

Applicants rely heavily on a recent D.C. Circuit decision, *In re Los Angeles Times Communications LLC*, 28 F.4th 292 (D.C. Cir. 2022), in which the court remanded for the district court to reconsider its denial of a motion to unseal certain search warrant materials and the government's opposition. *Id.* at 298–99. As noted in the Response, the Fifth Circuit has expressly criticized the D.C. Circuit for imposing too stringent a standard for sealing. *See Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981) (criticizing the D.C. Circuit's standards as "misreadings of the Supreme Court's directives"); *Sealed Search Warrants*, 868 F.3d at 393–94 (contrasting the Fifth Circuit's approach with that of "some other circuits which have characterized [the presumption in favor of access] as 'strong'"). More importantly, *In re Los Angeles Times* involved completely different circumstances from those present here. In that case, the investigation had been closed without charges, and the media had reported as much. *See* 28 F.4th at 295. Moreover, after the district court denied the unsealing motions but before the circuit court issued its decision, the Securities and Exchange Commission filed an enforcement action

5

that disclosed the existence of the Justice Department's investigation as well as some of the underlying facts. *Id.* at 296. Thus, unlike here, disclosure would not jeopardize an ongoing criminal investigation and would not reveal previously unreported information about that investigation's current status.

Applicants also cite recent litigation concerning unsealing of search warrant materials relating to the search of former President Trump's Florida residence known as Mar-a-Lago, arguing that because the government publicly filed its opposition to unsealing the affidavit in that case, it must do so here as well. *See* ECF No. 8, at 7–9. It is not difficult to understand why that situation is unique. The search of Mar-a-Lago was not only unprecedented in United States history, it was the subject of intense national media coverage as well as various statements by former President Trump and his representatives. In light of the unique circumstances, the Justice Department itself moved to unseal the warrant and property receipt, and the court granted that request. *See In re Sealed Search Warrant*, No. 22-MJ-8332-BER, ECF Nos. 18, 41 (S.D. Fla. filed Aug. 5, 2022). Public filing of the government's opposition to unsealing the affidavit therefore did not confirm the investigation's existence for the first time, as it would here, and did not disclose previously unreported information about the investigation's current status.

### III.  CONCLUSION

The government's efforts to protect the integrity of its investigation and respect the due process and privacy rights of the individuals identified in the Warrant Materials and the Response are not, as Applicants suggest, a "gambit." ECF No. 8, at 9. The government seeks to uphold longstanding Department of Justice policy, *see* JUSTICE MANUAL § 1-7.400

6

("DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations."), and to prevent recognized harms that would result from unsealing these sensitive records, *see Sealed Search Warrants*, 868 F.3d at 395 (recognizing that it is appropriate to seal materials where disclosure would "threaten an ongoing investigation," "endanger or discourage witnesses from providing evidence or testimony," or "damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation"). For the reasons stated above and those set forth in the Government's Response, the Motion should be denied.

        Respectfully submitted,

        COREY R. AMUNDSON
        Chief, Public Integrity Section
        U.S. Department of Justice

By:   */s/ Celia Choy*
      CELIA CHOY
      D.C. Bar No. 1017211
      Trial Attorney
      Public Integrity Section
      U.S. Department of Justice
      1301 New York Avenue, NW
      Washington, D.C. 20530
      Tel: (202) 875-1557
      Fax: (202) 514-3003
      celia.choy@usdoj.gov