# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

|  |  |  |
|---|---|---|
|  | ) |  |
| **IN RE:** | ) | **Civil Action No. 5:22-MC-00111** |
|  | ) |  |
| **ASSOCIATED PRESS ET AL.** | ) | **FILED *EX PARTE* AND UNDER** |
|  | ) | **SEAL** |
| _____ | ) |  |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO UNSEAL COURT RECORDS

# TABLE OF CONTENTS

I. **PRELIMINARY STATEMENT** ............................................................. **2**

II. **FACTUAL BACKGROUND** ............................................................... **2**

 A. ████████████████████████████████████ ................ 2

 B. ████████████████████████████████████████

   ████████████ ........................................................................ 3

 C. The Application to Unseal Court Records ....................................... 7

III. **APPLICABLE LAW** ........................................................................... **8**

 A. The Common-Law Qualified Right of Access ................................. 8

 B. The First Amendment Qualified Right of Access ........................... 10

IV. **ARGUMENT** ...................................................................................... **11**

 A. The Common Law Does Not Support Unsealing ............................ 11

 B. The First Amendment Does Not Support Unsealing ..................... 18

V. **CONCLUSION** ................................................................................... **25**

## I.     PRELIMINARY STATEMENT

A group of media organizations (the "Applicants") ask this Court to take the unprecedented step of unsealing search warrants and associated materials ███████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ Applicants fail to identify any precedent supporting this extraordinary request.  Their Application should be denied.

## II.     FACTUAL BACKGROUND

### A.     █████████████████████████████

Congressman Henry Cuellar represents Texas's 28th Congressional District, which includes Laredo, San Antonio, and surrounding areas, in the United States House of Representatives. ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**B.**

4

5

████████████████████████████████

████████████████████████████████

████████████████████████  ABC News reported that, according to "a source familiar with the matter," the search was conducted as part of a "wide-ranging federal probe relating to the former Soviet state of Azerbaijan and several U.S. businessmen."  Mike Levine, *FBI raid on House Democrat's home related to Azerbaijan probe, source says*, ABC News (Jan. 20, 2022), https://abcnews.go.com/US/fbi-raid-house-democrats-home-related-azerbaijan-probe/story?id=82384118.  An FBI spokesperson issued the following statement: "The FBI was present in the vicinity of Windridge Drive and Estate Drive in Laredo conducting court-authorized law enforcement activity.  The FBI cannot provide further comment on an ongoing investigation."  *FBI confirm search near Texas home of Rep. Henry Cuellar*, CNBC (Jan. 20, 2022), https://www.cnbc.com/2022/01/20/fbi-confirm-search-near-texas-home-of-rep-henry-cuellar.html.

On January 25, 2022, Congressman Cuellar's campaign posted a video in which Congressman Cuellar stated that "there is an ongoing investigation that will show that there was no wrongdoing on my part."  Paul J. Weber and Eric Tucker, *US Rep. Cuellar: "No wrongdoing on my part" after FBI search*, AP News (Jan. 25, 2022), https://apnews.com/article/henry-cuellar-texas-laredo-congress-59710347d2706f83072eb47f79e5f9df.  On April 13, 2022, Congressman Cuellar's attorney stated that "the Justice Department has informed me that Congressman Cuellar is

6

not a target of the investigation." Eric Tucker and Jake Bleiberg, *Lawyer: US Rep. Cuellar not the target of FBI investigation*, AP News (Apr. 13, 2022), https://apnews.com/article/henry-cuellar-congress-laredo-texas-71b9eac47f989e2fe7e94b28b8c75017. Consistent with Justice Department policy, the government has never publicly confirmed the existence of or otherwise commented on the warrants or the investigation beyond the limited statement of the FBI Spokesperson described above. *See* JUSTICE MANUAL § 1-7.400 ("DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations.").

### C. The Application to Unseal Court Records

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ Specifically, Applicants request an order unsealing "certain records related to search warrants obtained pursuant to Federal Rule of Criminal Procedure 41 and executed at the Laredo home and campaign office of U.S. Representative Henry Cuellar on or about January 19, 2022," to include "the search warrant applications, any supporting affidavits, the search warrants themselves, the returns, the docket sheets, and any related judicial records (the 'Warrant Materials')." ECF No. 1, ¶¶ 1–2. ███████████████████████████████████████████

█████████████████████████████████████████████

Applicants contend that the common-law qualified right of access to judicial records

7

and the First Amendment qualified right of access to criminal proceedings requires the Court to take the extraordinary step of unsealing the Warrant Materials. That is incorrect. Search warrants and related materials are not subject to public disclosure in an ongoing criminal investigation where such disclosure would jeopardize the investigation or unfairly imply criminal wrongdoing by subjects who may never have an opportunity to contest the allegations in court. Applicants fail to identify any binding or persuasive authority to the contrary. For the reasons that follow, the Application should be denied.

## III.  APPLICABLE LAW

### A.  The Common-Law Qualified Right of Access

Courts have long recognized "a general right," rooted in the common law, "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978). Search warrant materials, including supporting affidavits, are "judicial documents" subject to the common-law right of access. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017). That right, however, "is not absolute." *Nixon*, 435 U.S. at 598. Rather, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599. Thus, "the common law merely establishes a presumption of public access to judicial records." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

In contrast to certain other circuits, the Fifth Circuit "has repeatedly refused" to "characterize the public access presumption as 'strong' or require a strong showing of

8

proof." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019); *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981) (criticizing the Second and District of Columbia Circuits for "creat[ing] standards more appropriate for protection of constitutional than of common law rights"). Instead, the Fifth Circuit evaluates assertions of the common-law right of access to judicial records on a "case-by-case" basis. *Sealed Search Warrants*, 868 F.3d at 396. The court must "exercise [its] discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure." *Id.*

This "case-by-case" approach applies to "request[s] to unseal affidavits in support of pre-indictment search warrants." *Id.* The court may, in its discretion, leave such materials under seal if it finds that disclosure could "threaten an ongoing investigation," "endanger or discourage witnesses from providing evidence or testimony," or "damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation." *Id.* at 395. While the district court enjoys substantial discretion in making this determination, "the Fifth Circuit has consistently required the district court to explain its decisions to seal or unseal." *Id.* The district court "must generally articulate its reasons to support sealing the affidavits with a level of detail that will allow for [appellate] review." *Id.* at 397. "To the extent that the district court would have difficulty explaining its reasoning without disclosing sensitive information from the affidavits, it may file its reasoning under seal." *Id*. at 397 n.5.

9

### B. The First Amendment Qualified Right of Access

The First Amendment creates a right of public access to criminal trials. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603–06 (1982). This right is not limited to the trial itself but extends to certain other criminal proceedings and records. *See Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 7 (1986) ("*Press Enterprise II*") ("[T]he First Amendment question cannot be resolved solely on the label we give the event, *i.e.*, 'trial' or otherwise."). To determine whether there is a First Amendment right of access to a particular criminal proceeding, courts apply a two-part test: "(1) whether the proceeding has historically been open to the public and press; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 175 (5th Cir. 2011), *as revised* (June 9, 2011) (quoting *Press Enterprise II*, 478 U.S. at 8–9). "This test has been referred to as the 'experience' and 'logic' test." *Id.*

Even when the First Amendment right of access attaches, that right "is not absolute." *Globe Newspaper*, 457 U.S. at 606. When the government seeks to seal a proceeding in order to "inhibit the disclosure of sensitive information," it must show "that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606–07. In ordering closure, a court must articulate that interest and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *In re Hearst Newspapers*, 641 F.3d at 181 (quoting *Press-Enterprise II*, 478 U.S. at 9–10). The court "must consider any 'reasonable alternatives to

10

closure.'" *Id.* (quoting *Press-Enterprise II*, 478 U.S. at 14); *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987) ("[*Press-Enterprise II*] requires, if closure of a presumptively open proceeding is to withstand a first amendment challenge, that the court make specific, on-the-record, factfindings demonstrating that a substantial probability exists that an interest of a higher value will be prejudiced and that no reasonable alternatives to closure will adequately protect that interest.").

## IV.   ARGUMENT

Applicants ask this Court to release detailed and sensitive information ▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ The unprecedented relief they seek has no basis in either the common law or the First Amendment. As to the common law, compelling law-enforcement, due process, and privacy interests in favor of sealing far outweigh Applicants' qualified common-law right to access the Warrant Materials. As to the First Amendment, there is no First Amendment right to access search warrant applications and related documents in an ongoing criminal investigation. And even if there were, those same compelling governmental and individual interests necessitate continued sealing of the Warrant Materials in this case. The Application to unseal should be denied.

### A.   The Common Law Does Not Support Unsealing

The qualified common-law right of public access to judicial records does not support Applicants' request to unseal the Warrant Materials. The common-law analysis requires the Court to "balanc[e] the public's right to access judicial documents against

interests favoring nondisclosure." *Sealed Search Warrants*, 868 F.3d at 396. █████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

      First, the government has a compelling interest in preserving the integrity of its ongoing investigation. The Fifth Circuit has recognized that "[i]f the unsealing of pre-indictment warrant materials would threaten an ongoing investigation," the district court may properly "leave the materials under seal." *Sealed Search Warrants*, 868 F.3d at 395; *see also In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F.Supp. 2d 876, 895 (S.D. Tex. 2008) (holding, with respect to electronic surveillance orders, that "restrictions on speech and public access are presumptively justified while the investigation is ongoing"). ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ Unsealing the Warrant Materials would therefore reveal a wide range of nonpublic

12

information about the "nature, scope and direction of the government's investigation and the individuals and specific projects involved." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

Such revelations could cause the investigation's subjects to destroy evidence, coordinate their stories, or flee the jurisdiction. While these concerns are most acute with respect to the affidavits, unsealing the applications, warrants, and returns would also reveal nonpublic information about the government's investigation, such as the criminal statutes that the subjects may have violated and the types of evidence the government is gathering. This information could allow the subjects to anticipate the direction of the ongoing investigation and take steps to hinder or obstruct it. *See In re Search Warrants Executed on June 14, 2016*, 221 F. Supp. 3d 863, 866 (S.D. Tex. 2016) ("[U]nsealing the materials would substantially undermine the Government's *ongoing* investigation because unsealing would reveal sensitive information about the investigation's nature, scope, and direction, and would identify other investigation targets."); *In re Search Warrants in Connection with Investigation of Columbia/HCA Healthcare Corp., in El Paso, Tex*, 971 F. Supp. 251, 253 (W.D. Tex. 1997) ("If the contents of the affidavit were revealed, the targets of the investigation, as well as the press, would have a roadmap of the investigation. This would seriously compromise the integrity and effectiveness of an ongoing investigation.").

In addition, unsealing the Warrant Materials "might endanger or discourage witnesses from providing evidence or testimony." *Sealed Search Warrants*, 868 F.3d at 395. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████     ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████    For all these reasons, unsealing the Warrant

Materials would likely severely compromise the government's ongoing investigation.

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████

Applicants quote various cases for general statements about the importance of

public access to judicial records.  But none of those cases presents anything like the balance of interests present here.  Most of the Fifth Circuit authorities on which Applicants rely relate to sealing orders entered in civil lawsuits, *see* ECF No. 1-1, at 11 (citing *June Medical Servs., LLC v. Phillips*, 22 F.4th 512 (5th Cir. 2022), *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410 (5th Cir. 2021), and *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216 (5th Cir. 2020)), as do many of their out-of-circuit authorities, *see* ECF No. 1-1, at 10–12, 16 (citing *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), *Tri-Cnty. Wholesale Distribs, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012), *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004), *Smith v. U.S. District Court*, 956 F.2d 647 (7th Cir. 1992), *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)).  Another Fifth Circuit case that Applicants cite relates to closure of a sentencing hearing—a proceeding that, unlike a search warrant application, is adversarial and ordinarily open to the public.  *See* ECF No. 1-1, at 12 (citing *In re Hearst Newspapers, LLC*, 641 F.3d 168 (5th Cir. 2011)).

Three of the out-of-circuit cases Applicants cite involve requests by media outlets to copy video and audiotapes that had been admitted into evidence in a criminal trial, and therefore were already public.  *See* ECF No. 1-1, at 11, 14 (citing *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986), *United States v. Criden*, 648 F.2d 814 (3d Cir. 1981), and *In re National Broadcasting Co., Inc.*, 635 F.2d 945 (2d Cir. 1980)).  One dealt with a district court's decision to seal the docket sheet and all documents and notices filed in the run-up to a criminal trial in order to avoid tainting the jury pool, *see* ECF No. 1-1, at 10 (citing *In*

15

*re State-Record, Co., Inc.*, 917 F.2d 124 (4th Cir. 1990)), and one dealt with a state-court practice of sealing thousands of civil and criminal docket sheets without any specific justification, *see* ECF No. 1-1, at 8–11 (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)). The remainder of Applicants' authorities concern search warrant materials relating to investigations that had already been closed, a fact that may shift the balance of interests. *See* ECF No. 1-1, at 6, 10, 12–16 (citing *In re Los Angeles Times Communications LLC*, 28 F.4th 292 (D.C. Cir. 2022), *In re Leopold to Unseal Certain Electronic Surveillance Applications*, 964 F.3d 1121 (D.C. Cir. 2020), *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011), *In re Search Warrant*, No. 16-mc-00464, 2016 WL 7339113 (S.D.N.Y. Dec. 19, 2016), and *In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008)).

Applicants cite only three circuit court decisions that involved requests to unseal search warrant materials in an ongoing criminal investigation. In not a single one of those cases did the court actually order disclosure of the warrant, warrant application, supporting affidavit, or return. *See* ECF No. 1-1, at 9, 14 (citing *Sealed Search Warrants*, 868 F.3d at 397–98 (remanding for consideration under the "case-by-case" analysis), *In re Gunn*, 855 F.2d at 574 (affirming district court's sealing order), and *Baltimore Sun*, 886 F.2d at 65–66 (holding that district court failed to follow proper docketing procedures but finding that remand was unnecessary because affidavit had been unsealed on government's motion)). Applicants identify a single, out-of-circuit district court decision that orders partial unsealing of a search warrant affidavit in an ongoing investigation. *See* ECF No. 1-1, at

16

10, 17 (citing *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009)). In that case, while the court gave scant reasons for its decision, it emphasized Second Circuit caselaw stating that the "presumption of access is 'of the highest' weight" and that "material 'should not remain under seal *absent the most compelling reasons.*'" *Wells Fargo*, 643 F. Supp. 2d at 584 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)). As noted above, the Fifth Circuit has expressly criticized the Second Circuit's standard, holding that there is "no basis" to require a showing of "compelling circumstances" to support sealing. *Belo Broadcasting*, 654 F.2d at 433–34. The *Wells Fargo* decision accordingly has no persuasive value in this Circuit.

Finally, there is no reasonable alternative to sealing. *See In re Search Warrants Executed on June 14, 2016*, 221 F. Supp. 3d at 865–66 (holding that unsealing redacted versions of search warrant documents would be "impractical in the particular circumstances of this case"). As this Court is aware from its review of the affidavits, virtually every sentence contains sensitive information derived from ▮▮▮▮▮▮▮▮ and other covert investigative techniques. It would be impossible to redact all such information while preserving anything meaningful to be released. *See United States v. Amadeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (recognizing that where document "has been rendered unintelligible as a result of redactions," it is "more likely to mislead than to inform the public"). Similarly, every line of the property receipts attached to the warrant returns would have to be redacted to avoid disclosing the government's efforts to gather evidence. As to the warrant applications and the warrants themselves, the code sections and offense

descriptions—essentially everything except for the boilerplate—would have to be redacted to prevent revealing the nature and scope of the government's investigation ███████

████████████████████████

        ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

      This Court's sealing orders expire after 180 days. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ At the end of that period, the government will have to apply to the Court if it wishes to extend the sealing orders. If, by then, the balance of interests has shifted—for example, because the government has either brought charges or closed the investigation—then the Court may revisit the basis for continued sealing at that time.

### B.    The First Amendment Does Not Support Unsealing

Nor does the First Amendment support Applicants' request to unseal the Warrant

Materials. Although the Fifth Circuit has not yet addressed this issue, three Circuits have held that there is no First Amendment right to access documents filed in search warrant proceedings, at least in an active criminal investigation. Only the Eighth Circuit has held that there is, and even the Eighth Circuit acknowledged that the government's compelling law-enforcement interests could necessitate sealing notwithstanding the public's First Amendment rights.

In *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989), the Ninth Circuit applied the Supreme Court's two-pronged "experience and logic" test. With respect to the first prong, it examined the "history of the warrant process in this country" and found that "[h]istorical experience . . . furnishes no support for the claimed right of access to warrant proceedings in the instance cases." *Id.* at 1213–14. "On the contrary," it concluded, "the experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing as in these cases." *Id.* at 1214.

With respect to the second prong, the Ninth Circuit found that the public's interests in disclosure "are more than outweighed by the damage to the criminal investigatory process that could result from open warrant proceedings." *Id.* at 1215. Like grand jury proceedings, it held, "public access would hinder, rather than facilitate the warrant process and the government's ability to conduct criminal investigations." *Id.* Finally, the court found that its conclusion was reinforced by "the privacy interests of the individuals identified in the warrants and supporting affidavits." *Id.* at 1216. It explained that "the

19

issuance of a warrant . . . may indicate to the public that government officials have reason to believe that persons named in the search warrant have engaged in criminal activity." *Id.* Moreover, "persons named in the warrant papers will have no forum in which to exonerate themselves if the warrant materials are made public before indictments are returned." *Id.*

In *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989), the Fourth Circuit joined the Ninth in holding that "the press does not have a first amendment right of access to an affidavit for a search warrant." *Id.* at 64–65. The court noted, first, that "the Supreme Court has recognized that proceedings for the issuance of search warrants are not open." *Id.* at 64 (citing *Franks v. Delaware*, 438 U.S. 154, 169 (1978), and *United States v. U.S. District Court*, 407 U.S. 297, 321 (1972)). Second, it explained that "the need for sealing the affidavits may remain after execution" because, for example, "the affidavit may describe continuing investigations, disclose information gleaned from wiretaps that have not yet been terminated, or reveal the identity of informers whose lives would be endangered." *Id*. Accordingly, the assertion of a First Amendment right to access a search warrant affidavit failed both prongs of the "experience and logic" test. *Id.*

The Sixth Circuit reached the same conclusion in *In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012). It based its holding "in part on the lack of any evidence that there is a historical tradition of such access and in part because that access would be detrimental to the search warrant application and criminal investigatory processes." *Id.* at 433. Regarding the latter rationale, the court identified numerous potential harms that may arise from disclosure of search warrant materials, including: that the documents "would likely

identify information sources, such as wiretaps and undercover operations, the continued utility of which will be compromised by disclosure"; that "the safety of confidential witnesses may . . . be compromised"; that the "publication of search warrant documents may . . . reveal the government's preliminary theory of the crime being investigated and enable criminal suspects to figure out which other places are likely to be searched as the investigation continues"; that "publication of search warrant documents . . . could alert others that they, too, are suspects and could cause them to destroy evidence or to flee"; that "the government would need to be more selective in the information it disclosed in order to preserve the integrity of its investigations," thereby impeding the magistrate judge's "ability to accurately determine probable cause"; and that "the documents might reveal the names of innocent people who never become involved in an ensuing criminal prosecution, causing them embarrassment or censure." *Id.* at 432. In light of all these concerns, the court held that the public lacks any First Amendment rights in documents relating to search warrant applications, including not only the supporting affidavit but also "docket sheets of search warrant proceedings." *Id.* at 433. While the Fifth Circuit has not yet addressed this question, at least one district court within the Fifth Circuit has adopted the majority view. *See In re Search Warrants in Connection with Investigation of Columbia/HCA Healthcare Corp.*, 971 F. Supp. at 252 ("It appears to this Court that there exists no First Amendment right of public access to sealed documents, particularly in a pre-indictment ongoing criminal investigation.").

The Eighth Circuit stands alone in recognizing a First Amendment right of public

access to search warrant materials. In *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988), the court found, first, that "although the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal." *Id.* at 573. Second, it found that "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id.* Accordingly, it held that the First Amendment right of access does extend to search warrant materials, even where the investigation is ongoing. *Id.*

Nonetheless, recognizing that the First Amendment right of access "is not absolute," the Eight Circuit held that the government's compelling interests outweighed that right on the facts before it. *Id.* at 574. After reviewing the "affidavits and other materials attached to the search warrants," the court concluded that the "government has demonstrated that restricting public access to these documents is necessitated by a compelling government interest—the on-going investigation." *Id.* Because the affidavits described in detail "the nature, scope and direction of the government's investigation and the individuals and specific projects involved," there was "a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Id.* Moreover, the court agreed with the district court's determination that "line-by-line redaction of the sealed documents was not practicable," as "[v]irtually every page

contains multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's on-going investigation." *Id.* Accordingly, the court affirmed the district court's decision to seal the warrant materials.

This Court should follow the overwhelming weight of authority to hold that there is no First Amendment right of public access to warrant materials in an ongoing investigation. The claimed right fails both prongs of the "experience and logic" test. First, there is no historical tradition of access to search warrant proceedings. As the Supreme Court has recognized, "a warrant application involves no public or adversary proceedings: it is an ex parte request before a magistrate or judge." *U.S. District Court*, 407 U.S. at 321; *see also Franks*, 438 U.S. at 169 ("The pre-search proceeding is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence."). In finding to the contrary, the Eighth Circuit relied on the fact that "search warrant applications and receipts are routinely filed with the clerk of court without seal." *In re Gunn*, 855 F.2d at 573. But that does not mean that there is a historical tradition of access to such materials. As the Ninth and Sixth Circuits recognized, the government "has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal investigation requires secrecy." *Times Mirror*, 873 F.2d at 1214; *see also In re Search of Fair Finance*, 692 F.3d at 430–31 (same).

Second, the "logic" prong requires the court to assess "'whether public access plays

23

a significant positive role in the functioning of the particular process in question.'" *In re Hearst Newspapers*, 641 F.3d at 175 (quoting *Press Enterprise II*, 478 U.S. at 8). In finding that this prong was met, the Eighth Circuit observed that public access to search warrant materials would promote values of transparency and accountability. *See In re Gunn*, 855 F.2d at 573. But it failed to consider the negative effects of public access on the functioning of the search warrant process, such as compromising ongoing investigations and exposing unindicted individuals to reputational harm. The Eighth Circuit found that those compelling interests were present on the facts of *In re Gunn*, *see id.* at 574, but it failed to recognize that such interests exist whenever there is an ongoing investigation. Indeed, as the Ninth Circuit recognized, "warrant proceedings are indistinguishable from grand jury proceedings, which the Supreme Court has identified as the 'classic example' of the type of 'government operation [] that would be totally frustrated if conducted openly.'" *Times Mirror*, 873 F.2d at 1215 (quoting *Press-Enterprise II*, 478 U.S. at 9); *see also In re Search of Fair Finance*, 692 F.3d at 432 (listing harms that could follow from disclosure of search warrant materials in ongoing investigations); *Baltimore Sun Co.*, 886 F.2d at 64 (same). Thus, although public access to warrant materials may promote legitimate values, the severe harms that would inevitably ensue preclude a finding that "public access plays a significant positive role in the functioning" of the search warrant process. *In re Hearst Newspapers*, 641 F.3d at 175.

Even if the Court were to recognize a First Amendment right of public access to search warrant materials, it should find that compelling governmental and individual

interests outweigh that right on the facts of this case. As discussed above with respect to the common-law balancing test, compelling law-enforcement, due process, and privacy interests all weigh in favor of sealing in this case, and there is no reasonable alternative to sealing. *See supra*, Section IV.A.

## V.     CONCLUSION

The Application to unseal the Warrant Materials should be denied. In light of the *ex parte* nature of the proceedings, no hearing is necessary. Because the Court's statement of reasons for its decision would necessarily reveal nonpublic information, the Court should file its opinion under seal. *See Sealed Search Warrants*, 868 F.3d at 397 n.5 ("To the extent that the district court would have difficulty explaining its reasoning without disclosing sensitive information from the affidavits, it may file its reasoning under seal.").

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By:    */s/ Celia Choy*
        CELIA CHOY
        D.C. Bar No. 1017211
        Trial Attorney
        Public Integrity Section
        U.S. Department of Justice
        1301 New York Avenue, NW
        Washington, D.C. 20530
        Tel: (202) 875-1557
        Fax: (202) 514-3003
        celia.choy@usdoj.gov