UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| IN RE APPLICATION OF THE ASSOCIATED PRESS, GANNETT CO., INC., GRAY MEDIA GROUP, INC., HEARST CORPORATION, AND THE TEXAS TRIBUNE TO UNSEAL COURT RECORDS | Misc. Action No. 5:22-mc-00111<br>Hon. Andrew M. Edison |

**REPLY OF THE ASSOCIATED PRESS, GANNETT CO., INC., GRAY MEDIA GROUP, INC., HEARST CORPORATION, AND THE TEXAS TRIBUNE IN SUPPORT OF MOTION TO UNSEAL COURT RECORDS**

Katie Townsend
(S.D. Texas Bar No. 3547279)
ktownsend@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Admitted pro hac vice

*Counsel for Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and The Texas Tribune*

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ..................................................................................1

SUMMARY OF ARGUMENT..................................................................................2

ARGUMENT..............................................................................................................4

    I.    The common law requires public access to the Warrant Materials, subject—at most—to any redactions justified by a compelling need. ....................................... 4

        A.  The Government's generic reliance on an ongoing investigation fails...........5

        B.  The Government ignores the key facts specific to this case that affirmatively favor transparency and undercut any need for secrecy. ................................8

    II.   The First Amendment also requires public access to the Materials, subject—at most—to any redactions narrowly tailored to a compelling interest. ................... 12

CONCLUSION.........................................................................................................15

CERTIFICATE OF SERVICE .................................................................................17

## STATEMENT OF THE ISSUES

1. Whether, after "undertak[ing] a 'document-by-document, line-by-line balancing of the public's common law right of access [to judicial records] against the interests favoring nondisclosure'" on the facts of this particular case, *June Medical Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021)), the Government has justified concealing every line of every judicial record related to the searches executed at Rep. Henry Cuellar's home and campaign office on January 19, 2022.

2. Whether the Government has demonstrated that the continued sealing of those records, in their entirety, "is essential to preserve higher values and is narrowly tailored to serve that interest," despite the obvious less-restrictive alternative of redaction, so as to overcome the public's presumptive First Amendment right of access. *In re Hearst Newspapers, LLC*, 641 F.3d 168, 181 (5th Cir. 2011) (citations omitted).

## SUMMARY OF ARGUMENT

"The public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (citation omitted). As the Fifth Circuit has already explained in the specific context presented here—a motion for public access to warrant materials during an ongoing investigation—the right's core logic is that "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Sealed Search Warrants*, 888 F.3d 385, 395 (5th Cir. 2017) (citation omitted) (second alteration in original). So too in this case, where "[t]he fact that federal agents conducted searches at Rep. Cuellar's home and campaign office on January 19, 2022 is certainly no secret," Order & Opinion at 2 (ECF No. 13), but the record supporting the judicial decision to authorize those searches remains wholly sealed.

Even if this were an ordinary case, the common law and First Amendment would entitle the public to see for itself "that judges are not merely serving as a rubber stamp for the police" when approving warrants. *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008). For just that reason, disclosure of warrant materials "after a search has been executed" is "routine." *Id.* at 88 n.8; *accord Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). But this extraordinary case implicates even greater interests in transparency, including the public's right to evaluate the conduct of one of its

2

"public official[s]," *Bradley ex rel AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022), and the unique separation-of-power concerns raised by the search and seizure of property of a sitting Member of Congress, *see United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007). The public is entitled to understand the "important judicial decision[]" to authorize that step. *Sealed Search Warrants*, 888 F.3d at 395 (citation omitted).

The Government's arguments to the contrary reflect a basic quarrel with the holding of *Sealed Search Warrants*: Every generic justification for sealing it offers would describe *every* ongoing criminal investigation, resurrecting the rule of blanket secrecy that the Fifth Circuit has squarely rejected. *But see, e.g.*, *Greenlaw v. Klimek*, No. 4:20-cv-311, 2020 WL 7318085, at *2 (E.D. Tex. Dec. 11, 2020) (under *Sealed Search Warrants*, "the fact that the records to be unsealed represent pre-indictment investigation materials is not, by itself, a bar to disclosure"). If the Government believes the Fifth Circuit erred in concluding that a presumption of access attaches to warrant materials whether or not they relate to an ongoing investigation, it should have sought rehearing or further review. It cannot ask this Court to disregard Circuit precedent.

Because the common law and First Amendment guarantee presumptive access to the judicial records in question (the "Warrant Materials"), and because the Government's interests cannot plausibly prevail with respect to the entirety of those records, this Court should order the Warrant Materials unsealed, subject only—if necessary—to any tailored

3

redactions this Court finds justified by "compelling countervailing interests" after its line-by-line review. Order & Opinion, *supra*, at 8 (quoting *Binh Hoa Le*, 990 F.3d at 421).[1]

## ARGUMENT

**I. The common law requires public access to the Warrant Materials, subject—at most—to any redactions justified by a compelling need.**

As it must, the Government concedes that Fifth Circuit precedent already holds that the Warrant Materials are subject to "a presumption of public access" under the common law, notwithstanding the existence of its ongoing investigation. Merits Opposition, *supra*, at 8 (quoting *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993)). It then goes on to spend much of its opposition relitigating that question, claiming that secrecy should in fact be "presumptively justified while the investigation is ongoing." *Id.* at 1 (quoting *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 86, 895 (S.D. Tex. 2008)). That framing is telling: The Government has no argument specific to this investigation—or, more precisely, no argument specific to the contents of each of the particular records at issue here—only an objection to the Fifth

---

[1] The Government's remarkable suggestion that "there is 'no basis' to require 'compelling circumstances' to support sealing" distorts Circuit law. Gov't's Response in Opposition to Motion to Unseal Court Records ("Merits Opposition") at 17 (ECF No. 7) (quoting *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981)). In *Belo*, the Fifth Circuit criticized other courts for imposing a common law standard so rigorous "that only *the most* compelling circumstances" could justify nondisclosure, concluding there was "no basis" for an "*overpowering* presumption in favor of access" against which a defendant's fair trial rights could never prevail. 654 F.2d at 433–34 (emphases added) (citation omitted). But as this Court has already observed, Circuit law is clear that secrecy claims must be "compelling," *Binh Hoa Le*, 990 F.3d at 421, because the common law creates a presumption in favor of access, and sealing is "heavily disfavor[ed]," *June Medical Servs, LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).

4

Circuit's rule that "such requests for access must be assessed on a case-by-case basis." *Sealed Search Warrants*, 868 F.3d at 388.  But if blanket sealing were justified even in this exceptional case—where the public interest in transparency is at its apex and the Government's secrecy interests are sharply undercut by the information already in the public domain—the public's right of access to warrant materials would be a dead letter.

        A.      The Government's generic reliance on an ongoing investigation fails.

As the Government's opposition to unsealing even a word of its briefing in this case aptly put it, "all the government's arguments are premised on the fact that the investigation remains ongoing," Gov't's Opposition to Motion to Unseal Sealed Response of the United States at 1 ("Briefing Opposition").  None, though, are meaningfully specific to *this* investigation or the specific records at issue.  Every warrant affidavit describes the "nature, scope and direction of the government's investigation." Merits Opposition, *supra*, at 13 (quoting *In re Gunn*, 855 F.2d at 574).  Every warrant describes "the criminal statutes that the subjects may have violated and the types of evidence the government is gathering." *Id.*[2]  And it is typical, not extraordinary, for an

---

[2]     Because the Government is required to provide a copy of the warrant and receipt to the individual whose property was searched, *see* Fed. R. Crim. Proc. 41(c), the Government cannot seriously claim that concealing the information it contains is critical to preventing subjects from "anticipat[ing] the direction of the ongoing investigation and tak[ing] steps to hinder or obstruct it," Merits Opposition, *supra*, at 13.  Not only will the individual searched often *be* a subject of the investigation, but nothing prevents them from broadcasting the warrant to the world—as the Government itself explained in moving to unseal the Mar-a-Lago warrant.  *See* Deepa Shivaram, *FBI Collected Multiple Sets of Classified Documents from Trump's Mar-a-Lago Home*, NPR (Aug. 12, 2022), https://perma.cc/M2LZ-UZT6 (noting that "[Attorney General] Garland said Trump's attorney was given a copy of the search warrant and the property receipt so the former president could also have released the documents on his own accord").

affidavit to describe witnesses. *See id.* If those features were enough to justify blanket sealing, the Fifth Circuit's holding that courts must take "[a] case-by-case approach to pre-indictment warrant materials" would be a nullity; blanket sealing would be justified in every single case. *Sealed Search Warrants*, 868 F.3d at 395; *cf. Johnson v. Bodi Servs. LLC*, No. 5:17-cv-123, 2018 WL 319847 at *1 (S.D. Tex. June 29, 2018) (justifications for secrecy that "do little to distinguish the settlement in this case from any other" inadequate to justify sealing a settlement subject to the presumption of access).

  The magistrate judge whose opinion was reversed by the district court but vindicated by the Fifth Circuit in *Sealed Search Warrants* made the same point in rejecting identical arguments: "[a] conclusory allegation[] which would require the [continued] sealing of search warrants in nearly every criminal investigation" is not enough to overcome the common law presumption of access. *In re Search Warrant Executed on March 22, 2016*, 195 F. Supp. 3d 908, 914 (S.D. Tex. 2016) (citing *In re Up North Plastics, Inc.*, 940 F. Supp. 229, 234 (D. Minn. 1996)) (alterations in original). Remarkably, the Government is so determined to rewrite Circuit history to exempt ongoing investigations from the right of access that it claims no disclosure was ultimately ordered in that case, as if its interests prevailed in the end. *See* Merits Opposition, *supra*, at 16. But that claim is wrong, as the Government could have learned from its own past filings: The district court on remand, applying the rule announced by the Fifth Circuit, "ordered redacted versions of the search warrant affidavits in th[at] case to be unsealed."

United States' Unopposed Motion to Withdraw Notice of Appeal and to Dismiss Appeal, *United States v. Sealed Search Warrants*, No. 18-20124 (5th Cir. Mar. 7, 2018).[3]

Simply put, there is nothing unprecedented about the disclosure of redacted warrant materials during an ongoing investigation. The Fifth Circuit has already settled that disclosure is the presumptive rule, not the grudging exception, and the Government has not distinguished its investigation here from any other ongoing investigation. It should be no surprise that other courts have required more: not just the conceptual possibility of obstruction, but some concrete action the targets would likely take, *see In re Search Warrant Executed on March 22, 2016*, 195 F. Supp. 3d at 914, and not just the recitation of the words 'witness intimidation' or 'witness coordination,' but some real prospect of "adverse action," *see In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 594 (D. Md. 2004). And even if the Government had made a showing that specific, at most its concerns would justify limited redactions that preserve the public's ability to understand the basis for the "important judicial decision[]" to grant the warrants. *Sealed Search Warrants*, 888 F.3d at 395 (citation omitted); *see United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1195 n.5 (collecting cases in which "redacting sensitive information rather than refusing to unseal the

---

[3] Strangely, the district court's order on remand appears to be sealed—presumably because it was sealed pending the Government's pursuit of appellate remedies, but never unsealed after the Government abandoned its appeal. *See* Sealed Order, *United States v. Sealed Search Warrant*, No. 4:16-mj-00409 (S.D. Tex. Jan. 12, 2018) (ECF No. 62). Applicants would respectfully suggest that the District Court unseal that order to prevent future litigants from making the same mistake the Government did here, and to ensure that important precedent on the right of access to warrant materials is publicly available.

7

materials entirely" was found adequate, including "to protect the privacy interests of innocent third parties," "to protect the government's ongoing investigation," and "to protect confidential informants"). To countenance blanket sealing on so generic a showing would eviscerate the public's right of access in this important context.

> B. The Government ignores the key facts specific to this case that affirmatively favor transparency and undercut any need for secrecy.

In a mirror-image error, the Government fails to confront the considerations undercutting its purported need for continued secrecy that are distinctive to this case. It has nothing to say, for instance, about the fact that this case implicates "the powerful public interest" in learning of potential misconduct by a sitting public official. *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298 (reversing a district court decision that omitted that consideration from the unsealing analysis). But Circuit law is clear that the issues of public concern pervading this case—including the public's entitlement to evaluate the official conduct of Rep. Cuellar, the executive officials who sought and executed the warrants, and the judicial officer who granted them—"weigh[] in favor of disclosure" here. *Bradley ex rel AJW*, 954 F.3d at 233; *see also June Medical Servs.*, 22 F.4th at 520.

The Government likewise fails to address whether information already in the public domain vitiates the rationales for secrecy that might have appropriately been advanced in a different case. *See, e.g.*, Mike Levine, *Feds Issue Subpoenas Seeking Records Related to Rep. Cuellar and His Wife, Associates*, ABC News (Jan. 21, 2022), https://perma.cc/3378-CQ4S (describing the nature, scope, and direction of the related grand jury investigation). The point is perhaps most stark with respect to the

8

Government's passing references to reputational harm, which fail to account for the reality that Rep. Cuellar has already acknowledged the existence of an investigation, and that the highly public "search itself prompts suspicion and damages the reputation of the subject." *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. at 590; *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298 (faulting a district court for ignoring "extensive media reporting relating to the Justice Department's investigation, including the Senator's own acknowledgement" in weighing any need for continued secrecy).

The Government's effort to distinguish the Mar-a-Lago matter only underscores the point. It notes, for instance, that that search "was the subject of intense national media coverage as well as various statements by former President Trump and his representatives." Briefing Opposition, *supra*, at 6. But the same is true here: The Cuellar searches were the subject of intense national media coverage as well as various statements by Rep. Cuellar and his representatives. *See* Order & Opinion, *supra*, at 1–2 (canvassing same). And the claim that the material the Government affirmatively unsealed there "did not disclose previously unreported information about the investigation's current status," Briefing Opposition, *supra*, at 6, for its part, is simply false. The "revelations" included in those disclosures fed days of intensive news coverage and public discussion. Scott R. Anderson et al., *What's in the Unsealed Mar-a-Lago Search Warrant?*, Lawfare (Aug. 12, 2022), https://perma.cc/5SS5-BP6L. And of course, as this Court is no doubt aware, the district court in that matter ultimately ordered even more disclosure than the Government stepped forward to propose, enriching yet further debate on the search, its basis, and the conduct of both the Government and the

9

former President. *See* Jill Colvin & Nomaan Merchant, *Takeaways from the Unsealed Mar-a-Lago Affidavit*, AP (Aug. 27, 2022), https://perma.cc/X5R6-UV4K.

The Government's only explanation is that the Mar-a-Lago search was "unique," Briefing Opposition, *supra*, at 6—that it reflects "an unprecedented exception in our law for former presidents," *Trump v. United States*, No. 22-13005, 2022 WL 17352069, at *1 (11th Cir. Dec. 1, 2022). But the distinction is unprincipled; the public is just as entitled to confidence in its current legislators as in its former presidents, and a rule that grants the Government sole discretion to decide whether warrant materials from such investigations will be made public poses an obvious threat to public confidence that justice is carried out "fairly to all concerned," without "secret bias or partiality." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (plurality opinion). The common law presumption of access guards against that very risk, *see Sealed Search Warrants*, 888 F.3d at 395, and the Government has not—and cannot—overcome it here.

C.     Reliance on grand jury secrecy would be overbroad, if not misplaced.

In prior cases with similar facts, the Government has also cited grand jury secrecy as a rationale for the nondisclosure of warrant materials. *See* Applicants' Supplemental Ltr. Br. at 2 & n.1 (noting the Government's unsuccessful reliance on Rule 6(e) in attempting to conceal warrant materials from the investigation of Sen. Richard Burr). To the extent it does so here, *see* Levine, *supra* (noting that the searches were related to a grand jury probe related to Azerbaijan), such reliance is misplaced. Rule 6(e) would justify, at most, narrow redactions to the Warrant Materials—and likely not even that.

10

Materials that are prepared "based on knowledge of the grand jury proceedings" are not themselves protected by Rule 6(e) if they do not "reveal the grand jury information on which [they are] based." *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980). And as other courts have held in applying this principle to warrant materials, unsealing does not "disclose a matter occurring before a grand jury," Fed. R. Crim. Proc. 6(e)(6), if information that was derived from—or presented in parallel to— the grand jury appears in the records without *reference* to the grand jury, such that a reader could not distinguish what is from what isn't grand jury material, *see In re L.A. Times Commc'ns LLC,* No. 1:21-mc-00016, 2022 WL 3714289, at *4 (D.D.C. Aug. 29, 2022) (material "'coincidentally before the grand jury' that does not 'elucidate' the grand jury's 'inner workings'" not protected when it appears in warrant affidavit without reference to the grand jury) (quoting *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)); *In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 428 (D. Md. 2011) (same where affidavit incorporates information obtained by grand jury subpoena but "does not identify the information received from grand jury subpoena rather than other sources"). The same is true here. Unless the Government made very unusual choices in drafting the Warrant Materials, grand jury secrecy could not plausibly justify blanket sealing and likely would not even justify narrow redactions.[4]

---

[4] In the Burr matter, it eventually became clear that that mistakenly broad view of grand jury secrecy underpinned most of the Government's proposed redactions, which it swiftly abandoned after being reminded by the district court of the appropriate legal standard. *See* Minute Order, *In re L.A. Times Commc'ns LLC*, No. 1:21-mc-00016 (D.D.C. Aug. 12, 2022) (ordering the Government to explain "why information redacted in paragraphs 7, 21, 28, 29, 39–42, 45–47, 50–53, 58, and 59–61 of the affidavit in

11

## II. The First Amendment also requires public access to the Materials, subject— at most—to any redactions narrowly tailored to a compelling interest.

This Court need not reach the constitutional question in this case because the common law entitles Applicants to all the relief they seek. *See In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1126 (D.C. Cir. 2020) (approaching the analysis in that order). But the First Amendment also guarantees presumptive public access to the Warrant Materials, and it imposes an even more daunting burden on the Government to justify nondisclosure. The Government reaches a different result only by asking the wrong questions—whether the presumption attaches to "search warrant proceedings," or perhaps to "warrant materials in an ongoing investigation," Merits Opposition, *supra*, at 23, rather than to "warrant materials." That analysis repeats the error that *Sealed Search Warrants* rejected in the common-law context, conflating the question of whether the presumption of access attaches with the question of whether that presumption is overcome by facts specific to the particular case—including the stage and context of any related investigation.[5] Regardless, the

---

support of the search warrant actually implicates matters occurring before the grand jury . . . when no reference to the grand jury is made in those paragraphs); Response to Order of the Court, *In re L.A. Times Commc'ns LLC*, No. 1:21-mc-00016 (D.D.C. Aug. 16, 2022) (ECF No. 31) (conceding that those redactions were not required by Rule 6(e)).

[5]    *See also Globe Newspaper Co. v. Superior Court*, 457 U.S. 597, 605 n.13 (1982) (explaining that the First Amendment presumption of access attaches to criminal trials "as a general matter" and that the question whether the presumption is overcome "in the context of any particular criminal trial, such as a murder trial . . . or a rape trial, depends not on the historical openness of that type of criminal trial but rather on the state interests assertedly supporting the restriction").

Government's argument fails on its own terms because experience and logic both favor access to warrant materials, including during ongoing investigations.

As an initial matter, the Government's arguments from the history of warrant proceedings are a nonsequitur. Applicants have not moved to attend a warrant proceeding, and the presumption of access is not limited to the records of proceedings the public is entitled to attend. *See Phoenix Newspapers, Inc v. U.S. District Court*, 156 F.3d 940, 947 (9th Cir. 1998) (refusing to "conflate" the two issues"); *Dhiab v. Trump*, 852 F.3d 1087, 1104 (D.C. Cir. 2017) (Williams, J., concurring in part and concurring in the judgment) (noting that "courts have often, where documents were at issue, turned directly to the documents in dispute, and applied the 'experience and logic' ideas to them").

Turning to the documents at issue, "routine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials" because "warrant applications and receipts are routinely filed with the clerk of court without seal." *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88. The fact that warrant materials are presumptively accessible under the common law only bolsters that conclusion, as courts for common-sense reasons have "generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004). The Government's preferred authorities for the opposite proposition are unpersuasive because they misstate the experience of access.

"[T]he sealing of search warrant materials has traditionally been considered 'an extraordinary action' which was necessarily supported by a showing of 'real harm.'" *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589 (quoting 3A Charles

13

A. Wright et al., Fed. Prac. & Proc. Crim. § 672 at 333 (3d ed. 2004)); *see also In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D.R.I. 1980) (describing the sealing of a search warrant affidavit post-execution as an "unusual step"). Only recently have courts become laxer in holding the Government to the appropriate standard, such that "sealing search warrant affidavits and materials has become a routine matter" in some jurisdictions. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589; *cf. Binh Hoa Le*, 990 F.3d at 417 (noting a "growing practice" of unjustified sealing in civil cases). As former Magistrate Judge Stephen Wm. Smith found in a study of this very District, fewer than one in five search warrants issued by the Houston Division were sealed in 1995—but that percentage more than tripled over the ten years that followed. *See* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Courts L. Rev. 177, 208–09 (2009). As a result, "this common type of judicial activity, once routinely done in public view, is now routinely done behind closed doors." *Id.* at 209. But there is no adverse possession in constitutional law; the Government cannot curtail the public's right by violating it with sufficient consistency. Experience favors access to search warrant materials, even in ongoing investigations.

Logic points in the same direction for the same reasons the Fifth Circuit gave in *Sealed Search Warrants*: "Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms of the public, with the record supporting the court's decision sealed from public view." *Sealed Search Warrants*, 888 F.3d at 395 (citation omitted) (alteration in original). And this case starkly underlines the point. Images from

14

the Government's dramatic raids of Rep. Cuellar's home and office "featured in campaign ads against" Rep. Cuellar and "raised questions among voters" in a contested election, but the Government's insistence on secrecy has so far denied—and would continue to deny—the public any chance to understand for itself why a court approved, and why the Government executed, the search.  Ursula Perano, *Dems Failed to Dethrone the 'King of Laredo,' Now They Hope He Reigns On*, Daily Beast (Nov. 6, 2022).  Public access would plainly "play[] a significant positive role in the functioning" of the judicial process underpinning that search, by upholding "the appearance of fairness so essential to public confidence in the system."  *Press-Enter. v. Superior Court*, 478 U.S. 1, 8–9 (1986).  And the alternative is to deny the public any meaningful, contemporaneous understanding of a process "used to adjudicate important constitutional rights."  *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90.  That result would be intolerable.  The right of access to warrant materials provides a critical check on the executive and judicial branches, *see In re Gunn*, 855 F.2d at 573, and logic therefore favors public access.

Where, as here, the First Amendment presumption of access attaches to a particular class of judicial records, it provides even greater protection than the common law presumption does.  *See Sealed Search Warrants*, 868 F.3d at 390 n.1.  Accordingly, just as the Government has failed to justify the secrecy it seeks under the common law, it follows *a fortiori* that public access is likewise required under the First Amendment.

## CONCLUSION

For the foregoing reasons, Applicants respectfully ask the Court to order the Warrant Materials unsealed, subject only—if necessary—to any tailored redactions this

Court finds justified by "compelling countervailing interests" after its line-by-line review. Order & Opinion at 8 (quoting *Binh Hoa Le*, 990 F.3d at 421).

Dated: December 23, 2022

Respectfully submitted,

<u>s/ Katie Townsend</u>
Katie Townsend
Attorney-in-Charge
(S.D. Texas Bar. No. 3547279)
ktownsend@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*\* Admitted pro hac vice*

*Counsel for Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and The Texas Tribune*

## CERTIFICATE OF SERVICE

I, Katie Townsend, hereby certify that on the 23rd day of December, 2022, a copy of the foregoing was filed electronically using this Court's CM/ECF system.

Dated: December 23, 2022                Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

*Counsel for Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and The Texas Tribune*
