Case 5:22-mc-00111   Document 25   Filed on 09/01/23 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
September 01, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| IN RE ASSOCIATED PRESS, *et al.* § § § § § | CIVIL ACTION NO. 5:22-mc-00111 |

## OPINION AND ORDER

Pending before me is an Application to Unseal Court Records ("Application") filed by The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and the *Texas Tribune* (collectively, "Applicants"). Dkt. 1. Having reviewed the briefing and the applicable case law, and for the reasons explained below, I conclude that all of the court records at issue, except for the docket sheets, should remain under seal. Accordingly, the Application (Dkt. 1) is **GRANTED** in part and **DENIED** in part.[1]

## BACKGROUND

Applicants initiated this proceeding to unseal "certain court records related to search warrants obtained pursuant to Federal Rule of Criminal Procedure 41 and executed at the Laredo home and campaign office of U.S. Representative Henry Cuellar on or about January 19, 2022." Dkt. 1 at 1. In particular, Applicants

---

[1] The Government requests that I issue this order under seal because my reasoning "would necessarily reveal nonpublic information." Dkt. 18 at 26 (redacted version of Dkt. 7). The Fifth Circuit has directed that "[t]o the extent that the district court would have difficulty explaining its reasoning [for why information should remain under seal] without disclosing sensitive information from the [search warrant] affidavits, it may file its reasoning under seal." *United States v. Sealed Search Warrants*, 868 F.3d 385, 397 n.5 (5th Cir. 2017).

To uphold transparency and faith in the judiciary, the public has a right to know the considerations that led to my decision. An unredacted version of this opinion is being filed under seal, with a redacted version available for public viewing that omits all facts and analysis that could impede the Government's ongoing criminal investigation. Considering my task to balance the public's interest in transparency with the Government's interests favoring nondisclosure, *see Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021), I believe that redaction is preferable.

request the unsealing of "search warrant applications, any supporting affidavits, the search warrants themselves, the returns, the docket sheets, and any related judicial records" (collectively, the "search warrant materials"). *Id.*

The searches of Rep. Cuellar's home and campaign office on January 19, 2022 were widely reported by the news media after observers saw FBI agents carrying out the searches at both locations. One press report noted that more than "two dozen agents filed in and out of the [Cuellar] residence," removing "large bags, plastic bins, and a computer" and loading those into federal vehicles. Valerie Gonzalez, *FBI Probe Targets Rep. Cuellar's Home, Campaign HQ in Laredo*, MONITOR (Jan. 19, 2022), https://myrgv.com/local-news/2022/01/19/fbi-activity-underway-near-rep-cuellars-home-in-laredo/. That same media outlet reported that "[a]gents were also present at [Rep. Cuellar's] downtown campaign office in Laredo." *Id.*

The FBI expressly acknowledged that it searched Rep. Cuellar's property as part of an ongoing investigation. "The FBI was present [on January 19, 2022] in the vicinity of Windridge Drive and Estate Drive [near Rep. Cuellar's home] in Laredo conducting court-authorized law enforcement activity." *FBI Confirm Search near Texas Home of Rep. Henry Cuellar*, CNBC (Jan. 20, 2022, 8:36 AM), https://www.cnbc.com/2022/01/20/fbi-confirm-search-near-texas-home-of-rep-henry-cuellar.html. "The FBI cannot provide further comment on an ongoing investigation," said Rosanne Hughes, a public affairs officer out of the FBI's San Antonio Division. *Id.* Although the FBI spokesperson said the FBI was conducting "court-authorized law enforcement activity," she did not say what the FBI was investigating. *Id.*

A few days after federal agents searched his home and campaign office, Rep. Cuellar publicly acknowledged a federal investigation: "There is an ongoing investigation that will show that there was no wrongdoing on my part," Cuellar said. Patrick Svitek, *After FBI Raid, U.S. Rep. Henry Cuellar Says Investigation Will Prove "No Wrongdoing on My Part,"* TEX. TRIB. (Jan. 25, 2022, 4:00 PM),

https://www.texastribune.org/2022/01/25/henry-cuellar-texas-fbi/. In April 2022, a few months after the searches took place, Rep. Cuellar's attorney, Joshua Berman, told CBS News: "The Justice Department has informed me that Congressman Cuellar is not a target of the investigation . . . . He continues to cooperate fully in the investigation." Aaron Navarro, *Texas Rep. Henry Cuellar Is Not the Target of FBI Investigation, His Attorney Says*, CBS NEWS (Apr. 13, 2022, 9:21 PM), https://www.cbsnews.com/news/henry-cuellar-texas-representative-not-fbi-investigation-target/.

At the same time that Applicants filed this action to unseal certain court records related to the searches of Rep. Cuellar's home and campaign office, Applicants provided the Court with a Memorandum of Points and Authorities in Support of Application. *See* Dkt. 1-1. To allow for full consideration of the issues surrounding the request to unseal the search warrant materials, I ordered the Government to provide a brief setting forth its stance on whether certain court records should be unsealed. *See* Dkt. 5. I also gave Applicants the opportunity, once the Government outlined its position, to file a reply brief in support of its request to unseal court records. *See id.*

In accordance with my instructions, the Government filed a Response in Opposition to Motion to Unseal Court Records. Dkt. 7. That pleading, however, was filed entirely under seal—not a single word was available for public view. Even the Applicants could not review the briefing. As a result, the Applicants had no way to discern why the Government opposed their efforts to unseal the search warrant materials.

Unsurprisingly, Applicants promptly filed a Motion to Unseal Response. Dkt. 8. In that motion, Applicants argued that "[t]he Government's desire to litigate this matter in secret cannot be squared with the common law and First Amendment rights of access to judicial records, and it flies in the face of the principle that '[o]ur adversarial legal system generally does not tolerate ex parte determinations on the merits.'" *Id.* at 5 (quoting *Application of Eisenberg*, 654

F.2d 1107, 1112 (5th Cir. Unit B 1981)). The Government responded with a sealed Opposition to Motion to Unseal Sealed Response of the United States (Dkt. 9), explaining why it objected to unsealing Dkt. 7. I issued a 10-page opinion in which I ordered the partial unsealing of Dkts. 7 and 9, which I believed was "the best way to promote the public's interest in transparency while still protecting the Government's investigation." *See* Dkt. 13 at 8. After redacted versions of Dkts. 7 and 9 were made publicly available,[2] I set a date for Applicants to file a reply brief in support of the Application. Applicants timely filed their reply brief. Dkt. 22.

With full briefing from the parties before me, I can now finally consider the ultimate question: whether the search warrant materials should be unsealed.

## DISCUSSION

Applicants contend that the public's right of access under both the common law and the First Amendment demands full or partial unsealing of the search warrant materials. For the reasons described below, the particular circumstances of this case preclude me from granting Applicants' request, except as to the docket sheets.

**A.    COMMON LAW RIGHT OF ACCESS**

   **1.    Legal Standard**

"The public's right of access to judicial records is a fundamental element of the rule of law." *Le*, 990 F.3d at 417 (quotation omitted). This common law right of access allows members of the general public "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Search warrants and supporting affidavits are considered "judicial documents" within the public's right of access. *Sealed Search Warrants*, 868 F.3d at 396.

The common law establishes a "presumption in favor of the public's common law right of access to judicial records." *S.E.C. v. Van Waeyenberghe*, 990

---

[2] The redacted versions of Dkts. 7 and 9 are available at Dkts. 18 and 13-2, respectively.

F.2d 845, 849 (5th Cir. 1993). This presumption reflects the fact that "[p]ublic confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (cleaned up); *see also Sealed Search Warrants*, 868 F.3d at 395 (the "right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness").

The right to access public records, however, "is not absolute." *Nixon*, 435 U.S. at 598. The United States Supreme Court has determined that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599. Not surprisingly, the Fifth Circuit has followed suit, requiring district courts to "exercise their discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure." *Sealed Search Warrants*, 868 F.3d at 396. Even so, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Van Waeyenberghe*, 990 F.2d at 848 (quotation omitted).

In *Sealed Search Warrants*, the Fifth Circuit directed district courts to exercise their discretion on a case-by-case basis when determining whether to unseal pre-indictment warrant materials:

> If the unsealing of pre-indictment warrant materials would threaten an ongoing investigation, the district court has discretion to make redactions prior to unsealing or, where necessary, to leave the materials under seal. The same is true where unsealing such materials might endanger or discourage witnesses from providing evidence or testimony, or where the publication of a warrant could damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation.

868 F.3d at 395. "A case-by-case approach to pre-indictment warrant materials gives the district court discretion in balancing the legitimate interests *against* public access against the public's interests *supporting* access." *Id.* at 395–96.

When deciding whether to keep search warrant materials under seal, district courts must make "detailed, clear, and specific findings." *Id.* at 397. "While the district court need not conduct an exhaustive assessment, it must generally articulate its reasons to support sealing the affidavits with a level of detail that will allow for [appellate] review." *Id.* "This is not to say that a district court must go to painstaking lengths to review pre-indictment warrant materials, detailing factual findings on each line of every affidavit." *Id.*

### 2. Analysis

Per the Fifth Circuit's directive, I must balance the public's interest in accessing the search warrant materials against the Government's interest in concealing information related to an ongoing criminal investigation.

Applicants claim that "[t]he public has a powerful interest in understanding potential misconduct by a public official and the steps taken to investigate it." Dkt. 1-1 at 19. In making this argument, Applicants note the close proximity between the tight primary election that Rep. Cuellar faced in the Spring of 2022 and the execution of the search warrant[3]: "[T]he public has a clear interest in understanding the grounds for the Government's dramatic, overt search of a Member of Congress locked in a close primary fight" and "the Justice Department's

---

[3] By way of background, the search of Rep. Cuellar's home and campaign office occurred on January 19, 2022, and the primary race, in which Jessica Cisneros sought Rep. Cuellar's seat in U.S. House District 28, took place on March 1, 2022. *See* Abby Livingston, *Henry Cuellar, Jessica Cisneros Head to Runoff for South Texas Congressional Seat*, Tex. Trib. (Mar. 2, 2022 4:00 PM), https://www.texastribune.org/2022/03/02/henry-cuellar-jessica-cisneros-texas-primary-election/. Rep. Cuellar defeated Cisneros by less than 300 hundred votes in the subsequent runoff and ultimately beat challenger Cassy Garcia in the general election. *See* Alejandra Martinez & Stephen Neukam, *Congressman Henry Cuellar Wins Reelection in South Texas Despite Shadow of FBI Raid*, Tex. Trib. (Nov. 8, 2022 11:00 PM), https://www.texastribune.org/2022/11/08/henry-cuellar-cassy-garcia-tx-28/.

departure from its norm against taking overt investigative steps close in time to an election—especially an election that came down to just a few hundred votes." Dkt. 1-1 at 20.

In response, the Government cites two primary interests favoring sealing. First, it argues that it "has a compelling interest in preserving the integrity of its ongoing investigation." Dkt. 18 at 13. Specifically, the Government notes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Revealing these details could, the Government argues, "cause the investigation's subjects to destroy evidence, coordinate their stories, or flee the jurisdiction" in addition to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and discouraging witnesses from providing evidence and testimony. *Id.* at 14–15. The Government acknowledges that "these concerns are most acute with respect to the affidavits" but argues that "unsealing the applications, warrants, and returns would also reveal nonpublic information about the government's investigation, such as the criminal statutes that the subjects may have violated and the types of evidence the government is gathering." *Id.* at 14. This information, according to the Government, could cause the investigation's subjects to "anticipate the direction of the ongoing investigation and take steps to hinder or obstruct it." *Id.*

Second, the Government contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Few court decisions in the public record have applied the *Sealed Search Warrants* case-by-case approach to unsealing pre-indictment warrant materials. Of the few cases in the Fifth Circuit that have applied the test, none presents facts quite like those here. The most analogous case considered whether to allow the filing of a redacted complaint in the midst of a criminal investigation. *See*

7

*Greenlaw v. Klimek*, No. 4:20-cv-311, 2020 WL 7318085, at *1 (E.D. Tex. Dec. 11, 2020). In *Greenlaw*, the plaintiffs—a family of real estate development financing companies and related individuals—sought to file a redacted complaint against federal law-enforcement officials who had been investigating the financing companies for more than five years. The complaint referenced the contents of a sealed affidavit that was used to obtain a search warrant for one of the company's corporate headquarters. United States District Judge Sean Jordan found that the public's interest in partial disclosure of the complaint outweighed the government's interest in nondisclosure. Judge Jordan explained that the government's unsupported argument that disclosure would have a "chilling effect" on witnesses and investigators did not justify shielding the complaint from the public: "If Defendants could articulate specific harms that disclosure of the Complaint would do to the government's investigation, the Court's analysis might lead to a different conclusion." *Id.* at *5.

This case stands in stark contrast to *Greenlaw*. Here, the Government has articulated numerous specific harms that could result from disclosure of the search warrant materials[4]:



---

[4] Given that most of these specific harms were redacted from the Government's response, *see* Dkt. 18, I understand Applicants' characterization of the Government's stated interests favoring nondisclosure as "generic." Dkt. 22 at 7. But the Government's recitation of harms, put in context with the redacted material, is far from generic. Unsealing information concerning the nature, scope, and direction of this investigation would reveal copious amounts of unreported information about this investigation that would no doubt seriously threaten the Government's ongoing investigation. Moreover, releasing information concerning the criminal statutes that may have been violated and the witnesses involved would alert individuals of their potential involvement in the investigation.

> Such revelations could cause the investigation's subjects to destroy evidence, coordinate their stories, or flee the jurisdiction. While these concerns are most acute with respect to the affidavits, unsealing the applications, warrants, and returns would also reveal nonpublic information about the government's investigation, such as the criminal statutes that the subjects may have violated and the types of evidence the government is gathering. This information could allow the subjects to anticipate the direction of the ongoing investigation and take steps to hinder or obstruct it. . . .
>
> [U]nsealing the Warrant Materials might endanger or discourage witnesses from providing evidence or testimony. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Dkt. 18 at 13–15 (cleaned up).

The harms listed by the Government closely align with those articulated in other cases where courts ordered the continued sealing of search warrant materials. For example, United States Magistrate Judge Sarah Cave in the Southern District of New York held that the balance tipped in favor of sealing the search warrant materials in a case involving an ongoing investigation related to the theft of the diary of Ashley Biden, President Joe Biden's daughter. *See In re Search Warrant Dated Nov. 5, 2021*, No. 21 Misc. 813, 2021 WL 5830728, at *1, *8 (S.D.N.Y. Dec. 7, 2021). There, the Reporters Committee for Freedom of the Press ("RCFP") asked the court to unseal documents relating to a search warrant executed at the home of James E. O'Keefe, III, the founder of Project Veritas. *Id.* at *1. The government argued that both law enforcement and privacy interests of third parties outweighed the public's interest in the search warrant materials. *Id.* at *5. The law enforcement interests cited by the government included "the integrity of the ongoing investigation by the grand jury, confidentiality of the identities of persons of interest, cooperation of persons in this or future investigations, and preventing potential subjects or witnesses from destroying evidence, tampering with witnesses, or fleeing." *Id*. As for the privacy interests of

third parties, the government argued that "there are many uncharged individuals named in the Materials" and that each had "a substantial privacy interest at this pre-indictment stage of the investigation." *Id.* at *6 (cleaned up).

Despite the strong presumption of public access afforded to search warrant materials in the Second Circuit, Judge Cave held that the materials should remain sealed in their entirety. *Id.* at *8. Judge Cave found the government's arguments compelling, noting that the search warrant materials "could be used to affect adversely the outcome of [the ongoing grand jury] investigation before any charges are filed or a decision is made not to seek formal charges" and the "privacy interests of third parties . . . .while the Investigation is ongoing and before any charges have been publicly filed[] weigh heavily against granting public access to the Materials." *Id.* Finally, Judge Cave concluded that the search warrant materials must remain completely under seal to ensure the "integrity and security" of the Government's investigation:

> [T]he Materials contain not only the legal theories of the Investigation, but also details about the information the Government has obtained and from which sources. The nature and extent of any possible redactions to omit this information would render unintelligible the contents of the Materials, and could be more likely to mislead than to inform the public in the way that RCFP predicts. Accordingly, the Court concludes that unsealing the Materials, even in redacted form, cannot be accomplished at this stage without serious risk to the Investigation, and they must therefore remain sealed at this time.

*Id.* (cleaned up).

I have undertaken a close review of the search warrant materials, and it is clear to me that the common law does not support unsealing in this case. Almost every single sentence of the search warrant applications, supporting affidavits, the search warrants themselves, and the returns[5] contain information that could

---

[5] Applicants correctly note that the Government, after executing the warrants, provided a copy of the warrant and return to the individuals whose property was searched as required by Federal Rule of Criminal Procedure 41(f)(1)(C). Applicants argue that because of this, the Government "cannot seriously claim that concealing the information [the warrants

threaten the Government's investigation or damage an unindicted individual's reputation. The Government's articulated harms sufficiently demonstrate compelling circumstances that justify secrecy, and the public's interest in transparency, however legitimate, cannot overcome the Government's interest in nondisclosure. To be clear, I have considered Applicants' interest in disclosing this information so the public can understand the Department of Justice's reason for executing these search warrants just weeks before a hotly contested primary election. At the same time, I believe that disclosure of the search warrant materials could actually work *against* the public interest because disclosure would severely impede the Government's progress in its investigation. *See In re Search Warrant Dated Nov. 5, 2021*, 2021 WL 5830728, at *8 ("[T]he public has at least as great an interest in preserving the integrity and security of criminal investigations as in obtaining access to judicial documents." (quotation omitted)).

It is worth mentioning that the court's decision in *Greenlaw* to allow the filing of a redacted complaint relied partially on the length of the government's investigation. There, the government had been investigating the plaintiffs for almost six years yet had not brought charges or told the court when it expected to make such a determination. *See Greenlaw*, 2020 WL 7318085, at *5. Here, although the Government has not indicated when (or if) it anticipates bringing charges, I do not find that the duration of the investigation, at this time, is of consequence to my determination. Notably, the affidavit in *Greenlaw* had been under seal for over four years, *id.* at *1, whereas the search warrant materials here have been under seal for approximately a year and a half.

---

and returns] contain[] is critical to preventing subjects from anticipating the direction of the ongoing investigation and taking steps to hinder or obstruct it." Dkt. 22 at 7 n.2 (cleaned up). I disagree with Applicants. First, the information contained in the warrants and returns could alert *other* individuals—separate and apart from the individuals whose property was searched—that they may be a subject of the investigation. Second, although the individuals whose property was searched could release the warrants and returns to the public, they have not done so. The Government's compliance with Rule 41 cannot independently justify disclosure.

11

I have also considered Applicants' concern that the Government is relying too much on grand jury secrecy to justify nondisclosure. Applicants note that Federal Rule of Criminal Procedure 6(e) protects information before the grand jury and not statements or materials "based on knowledge of the grand jury proceedings." Dkt. 22 at 13 (quoting *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980)). Let me be clear: The Government never cites grand jury secrecy, on its own, as an interest favoring nondisclosure. Rather, the Government argues that the very information that was before the grand jury is threatening to the Government's ongoing investigation. This fact distinguishes this case from *In re L.A. Times Commc'ns LLC*, No. 1:21-mc-00016, 2022 WL 3714289 (D.D.C. Aug. 29, 2022), cited by Applicants, because the sensitive information in the search warrant materials here is independently threatening to the Government's investigation. In other words, the Government seeks to keep the search warrant materials sealed primarily to protect its ongoing criminal investigation—not merely to protect the secrecy of grand jury proceedings. In short, the ends of justice will be frustrated, not served, if the public gains unfettered access to the search warrant materials.

Given my decision that wholesale unsealing is inappropriate in this case, I will now consider Applicants' request that I issue the search warrant materials with redactions. Make no mistake: I am a firm believer that "[t]he public's right of access to judicial proceedings is fundamental."[7] *Le*, 990 F.3d at 418. As a result, I am reluctant to keep documents from public view, whether it be a criminal case or a

---

[7] *See Tankers v. M/T Swift Winchester*, No. 3:22-CV-00390, 2023 WL 1816858, at *3 (S.D. Tex. Feb. 8, 2023) (Edison, J.) (ordering everything except privileged communications either unsealed or redacted); *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-04330, 2022 WL 17908806, at *2 (S.D. Tex. Dec. 16, 2022) (Edison, J.) (denying motion to seal); *Bage v. Galveston County*, No. 3:20-CV-00307, 2022 WL 2954332, at *2 (S.D. Tex. July 25, 2022) (Edison, J.) (ordering numerous docket entries unsealed); *Martinez v. Tex. Dep't of Crim. Just.*, No. 3:21-CV-00258, 2022 WL 2834294, at *2 (S.D. Tex. July 20, 2022) (Edison, J.) (ordering redactions of *only* home addresses from sealed docket entries); *Kozlowksi v. Buck*, No. 3:20-CV-00365, 2021 WL 4973710, at *2 (S.D. Tex. Oct. 25, 2021) (Edison, J.) (ordering redactions of sealed docket entries).

civil case. To that end, I have poured over each word in the search warrant materials many times, taking to heart the Fifth Circuit's guidance that district courts should undertake a "document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Le*, 990 F.3d at 419 (quotation omitted). My exhaustive review has led me to the inescapable conclusion that this is one of the (hopefully) few cases in which there is no reasonable alternative to sealing. As the Government notes, "virtually every sentence [of the search warrant materials] contains sensitive information derived from ▮▮▮▮▮▮▮▮▮▮ and other covert investigative techniques." Dkt. 18 at 18. It would be impossible to redact all such information while preserving anything meaningful to be released. *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (recognizing that where a document "has been rendered unintelligible as a result of redactions," it is "more likely to mislead than to inform the public").

Applicants dispute the Government's position that the search of former President Donald Trump's Mar-a-Lago residence, which ultimately resulted in the redacted release of the search warrant materials, was unique and does not support disclosure here. Although I agree with Applicants that "the public is just as entitled to confidence in its current legislators as in its former presidents," Dkt. 22 at 12, I cannot turn a blind eye to the vast differences between the circumstances of the Mar-a-Lago search and the searches of Rep. Cuellar's home and campaign office. First, the media coverage of and the public response to the Mar-a-Lago search was unquestionably more intense than the searches here. Second, former President Trump himself encouraged the government to release the search warrant materials for the Mar-a-Lago search. *See* Kyle Cheney & Josh Gerstein, *Judge Orders Redacted Release of Mar-a-Lago Affidavit*, POLITICO (Aug. 25, 2022, 4:42 PM), https://www.politico.com/news/2022/08/25/justice-department-proposes-deletions-for-mar-a-lago-search-warrant-00053724. Rep. Cuellar has not done so here. Third, the government on its own motion called for the unsealing of the warrant and return for the Mar-a-Lago search. *See id.* Fourth, whereas multiple

13

whole sentences and paragraphs of the Mar-a-Lago affidavit were unsealed, the same would not be possible here due to the sensitive information interwoven into nearly every sentence of the affidavits.

Accordingly, I find that the public's right to access judicial documents is outweighed by the interests favoring nondisclosure as to the search warrant applications, supporting affidavits, the search warrants themselves, and the returns. I will rule on the docket sheets separately.

**B.    FIRST AMENDMENT RIGHT OF ACCESS**

**1.    Legal Standard**

In addition to a common law right of access, the press and the public enjoy a First Amendment right of access to criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). In *Richmond Newspapers*, the Supreme Court recognized this right only in the narrow context of criminal trials, but the right has since been extended to various parts of criminal prosecutions. *See In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 175–76 (5th Cir. 2011) (collecting cases). To determine whether a First Amendment right of access extends to a particular criminal proceeding, courts consider two factors: "(1) whether the proceeding has historically been open to the public and press; and (2) whether public access plays a significant role in the functioning of the particular process in question." *Hearst Newspapers*, 641 F.3d at 175. This test has been coined "the 'experience' and 'logic' test." *Id.* (quoting *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982)); *see also United States v. Ahsani*, --- F. 4th ----, 2023 WL 4994302, at *4 (5th Cir. Aug. 4, 2023). If a right of access under the First Amendment exists, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 510 (1984).

Although neither the Supreme Court nor the Fifth Circuit has specifically held that the First Amendment right of access to criminal proceedings extends to

14

*documents*, the Fifth Circuit has implicitly agreed with other circuits' application of the right to documents. *See Sullo & Bobitt, P.L.L.C. v. Milner*, 765 F.3d 388, 393 & n.4 (5th Cir. 2014).

### 2. Circuit Split

The Fifth Circuit has not addressed the precise issue of whether there is a First Amendment right to access pre-indictment search warrant materials in ongoing criminal investigations. Of the circuits that have confronted this issue, three—the Fourth Circuit, Sixth Circuit, and Ninth Circuit—have found that no such right exists. *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) ("[W]e hold that the press does not have a first amendment right of access to an affidavit for a search warrant."); *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) ("We conclude that there is no First Amendment right of access to documents filed in search warrant proceedings."); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1217–18 (9th Cir. 1989) ("While warrant materials may, in due course, be disclosed . . . , it does not follow that the public should necessarily have access to the information before [a suppression hearing]."). Only the Eighth Circuit has recognized a First Amendment right of public access to search warrant materials. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("We are persuaded that the first amendment right of public access does extend to the documents filed in support of search warrant applications.").

In concluding that the First Amendment does not provide a right to access pre-indictment warrant materials, the Fourth Circuit, Sixth Circuit, and Ninth Circuit all noted that warrant proceedings have historically been closed to the public and press. *See Baltimore Sun*, 886 F.2d at 64; *In re Search of Fair Fin.*, 692 F.3d at 433; *Times Mirror*, 873 F.2d at 1213–14. The Sixth Circuit and Ninth Circuit further determined that public access to warrant proceedings and the related documents would be detrimental to—if not completely frustrate—the

government's ability to conduct criminal investigations.[8] *See In re Search of Fair Fin.*, 692 F.3d at 433; *Times Mirror*, 873 F.2d at 1215.

On the other end of the spectrum, the Eighth Circuit extends the First Amendment public right of access "to the documents filed in support of search warrant applications." *Gunn*, 855 F.2d at 573. On the experience prong, the Eighth Circuit acknowledged that

> although the process of issuing search warrants has traditionally not been conducted in open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal. Under the common law[,] judicial records and documents have been historically considered to be open to inspection by the public.

*Id.* On the logic prong, the Eighth Circuit found that access to search warrant materials "is important to the public's understanding of . . . the criminal justice system." *Id.*

Notably, however, the Eighth Circuit in *Gunn* did not hold that disclosure was warranted. Rather, it held that the government's interest in the secrecy of its ongoing criminal investigation outweighed the presumption of openness:

> These documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved. Many of the specific allegations in the documents are supported by verbatim excerpts of telephone conversations obtained through court-authorized electronic surveillance or information obtained from confidential informants or both. There is a substantial probability that the government's ongoing investigation would be severely compromised if the sealed documents were released.

*Id.* at 574. The court also held that line-by-line redaction was impractical because "[v]irtually every page contains multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or

---

[8] The Fourth Circuit's decision in *Baltimore Sun* rested on the first prong of the experience and logic test. *See Baltimore Sun*, 886 F.2d at 64 ("The Sun's claim of a first amendment right of access to the affidavit fails because it does not satisfy the first prong of the test. Twice the Supreme Court has recognized that proceedings for the issuance of search warrants are not open.").

reveals the nature, scope and direction of the government's ongoing investigation." *Id*. Accordingly, the court held that the search warrant materials should remain under seal. *See id*.

### 3. Analysis

Applicants argue that I should extend the First Amendment right of access to search warrant materials because both experience and logic support disclosure here. Applicants note that search warrant materials were traditionally filed as open records, and only recently has the sealing of such materials become more routine. Yet, the article that Applicants cite to support their argument takes issue with a trend that is not yet at issue here: the perpetual sealing of search warrants. *See* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 FED. CTS. L. REV. 177, 211 (2009). In fact, former Magistrate Judge Stephen Wm. Smith acknowledged in the article that "[n]o one questions the need for temporary sealing to avoid jeopardizing an ongoing criminal investigation." *Id*. At this time, while the Government's investigation is still very much active, the circumstances call for the continued sealing of the search warrant materials. If, in the future, the Government closes its investigation or a significant amount of time passes with no meaningful action by the Government, then disclosure may be warranted. *See Greenlaw*, 2020 WL 7318085, at *5.

Even assuming, arguendo, that a First Amendment right of access to these materials exists, disclosure would be inappropriate. Tellingly, the Government's concerns here are nearly identical to those in other cases within the Fifth Circuit where courts determined that the First Amendment did not require disclosure of search warrant affidavits and related materials. For example, United States District Court Judge David Briones in the Western District of Texas found that the Government demonstrated a compelling interest that necessitated restriction of public access to sealed affidavits and supporting materials in connection with searches executed at hospitals in El Paso, Texas:

> If the contents of the affidavit were revealed, the targets of the investigation, as well as the press, would have a roadmap of the investigation. This would seriously compromise the integrity and effectiveness of the ongoing investigation. The affidavit contains identifying information with respect to several government informants whose positions at Columbia and other healthcare facilities would be seriously jeopardized, creating a significant chilling effect on the investigation. Unsealing the affidavit and supporting materials could conceivably notify pertinent Columbia employees in other jurisdictions on the nature and scope of the Government's investigation so as to prompt the destruction of evidence or the falsification of records.

*In re Search Warrants in Connection with Investigation of Columbia/HCA Healthcare Corp.*, 971 F. Supp. 251, 253 (W.D. Tex. 1997). Similarly, United States District Court Judge Frank Montalvo in the Western District of Texas noted that "[e]ven if this Court were to follow the Eighth Circuit and determine there is a First Amendment right of access to the affidavits in question, it finds, with regard to every such request to seal the affidavits, the Government amply demonstrated a compelling interest in maintaining the confidentiality." *United States v. Ketner*, 566 F. Supp. 2d 568, 586 (W.D. Tex. 2008). The government's concerns in *Ketner* included the fact that the documents detailed the nature, scope, and direction of the investigation and that allegations in the documents were supported by conversations obtained by court-authorized electronic surveillance. *See id*. Considering the similarity to the Government's concerns articulated in this case, I find that the Government has demonstrated an overriding interest in closure.

I recognize that the First Amendment imposes a "more stringent" framework for refusing disclosure than under the common law. *Green v. Winona Montgomery Consol. Sch. Dist.*, No. 4:21-cv-32, 2021 WL 1723226, at *1 (N.D. Miss. Apr. 30, 2021). Yet, this strict analysis does not change the outcome here. The Government's concerns that outweigh Applicants' common law right of access to the search warrant materials also lead me to conclude that "closure is essential to preserve higher values." *Press-Enter. Co.*, 464 U.S. at 510. If the Government

closes its investigation or ample time passes without meaningful action, then reconsideration of this decision is warranted.

### C.    THE DOCKET SHEETS

Although Applicants have demonstrated paramount interests in the search warrant materials, I will grant Applicants' request to unseal the docket sheets for the search warrants executed at Rep. Cuellar's home and campaign office. The Fifth Circuit has not explicitly found a right of access under either the common law or the First Amendment to docket sheets. Yet, as Applicants point out, other circuits have found such a right under the First Amendment. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) (holding that circuit precedent "suggest[s] that the media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings"); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) ("[T]he public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets."); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J., concurring in part) ("The First Amendment access right extends to court dockets.").

The docket sheets in question do not contain any information that would threaten the Government's investigation. Accordingly, I order that the docket sheets in case Nos. 4:22-mj-107 and 4:22-mj-111 be unsealed.

### CONCLUSION

For the reasons explained above, I conclude that the search warrant applications, supporting affidavits, the search warrants themselves, and the returns should remain under seal, while the docket sheets should be unsealed. Accordingly, the Application (Dkt. 1) is **GRANTED** in part and **DENIED** in part.[9]

---

[9] "Under 28 U.S.C. § 636(b)(1)(A), non-dispositive pretrial matters—including motions to seal—can be referred to and decided by magistrate judges." *Grand v. Schwarz*, No. 15-cv-8779, 2018 WL 1604057, at *1 n.1 (S.D.N.Y. Mar. 28, 2018); *see also Thomas v. Bzoskie*, No. 16-cv-3805, 2017 WL 6033673, at *2 (D. Minn. Dec. 6, 2017) ("A motion to seal

I **ORDER** that the docket sheets in case Nos. 4:22-mj-107 and 4:22-mj-111 be unsealed.

SIGNED this 1st day of September 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

documents is a nondispositive motion ordinarily decided by a magistrate judge."); *Huffman v. Allred*, No. 11-cv-01459, 2011 WL 5864048, at *1 n.1 (D. Colo. Nov. 22, 2011).